PER CURIAM.
Lawrence Vincent CHambers appeals his convictions and sentences for burglary with an assault or battery of an occupied dwelling while armed and armed robbery, following a jury trial. For the reasons that follow, we reverse and remand for a new trial.
Chambers first asserts, and we agree, that the trial court erred when it repeatedly permitted the state to elicit out-of-court statements relating accusatory information, to establish the logical sequence of events, see Conley v. State, 620 So.2d 180, 182-83 (Fla.1993), and to thereafter argue this inadmissible testimony as proof of his guilt. See Trotman v. State, 652 So.2d 506, 507 (Fla. 3d DCA 1995); Davis v. State, 493 So.2d 11, 12-13 (Fla. 3d DCA 1986); Molina v. State 406 So.2d 57, 57-58 (Fla. 3d DCA 1981); Postell v. State, 398 So.2d 851, 854 (Fla. 3d DCA 1981). We also agree that the trial court further erred when it permitted the state’s detective witness to state that as part of his investigation of this case, he contacted the “robbery clearing house” for the purpose of sharing or exchanging information about Chambers with other police departments. The only obvious relevancy of such evidence was to attack Chambers’ character and to demonstrate his possible involvement in other uncharged robberies which is violative of section 90.404, Florida Statutes (1997), and presumptively harmful. See Gore v. State, 719 So.2d 1197, 1199 (Fla.1998); Czubak v. State, 570 So.2d 925, 928 (Fla.1990).
Given these errors, we must now determine whether the state, as the beneficiary of the same, has met its burden under State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), of demonstrating the harmlessness of these errors. We conclude that it has not. The state’s only admissible evidence of Chambers’ involvement in these crimes consisted of the testimony given by the victim and a co-defendant, David Callahan, who later became a witness for the state in exchange for a lenient sentence. Although the victim identified Chambers, at trial, as the man who had robbed her at gunpoint, she had initially told the police that the perpetrator had a crooked nose. Chambers does not have a crooked nose, but the evidence revealed that another uncharged co-perpetrator in this crime known as “Jay” or “Brown” does have a crooked nose. Callahan likewise testified as to Chambers’ involvement in the crimes charged, but he also admitted that he had lied to the police in order to protect “Jay” or “Brown,” or the uncharged co-perpetrator with the crooked nose. Given such equivocal evidence of Chambers’ culpability for the crimes charged, we do not believe that it can be concluded that there is no reasonable possibility that the errors committed in this trial were harmless and did not contribute to the jury’s verdict. See DiGuilio, 491 So.2d at 1135. For that reason, we reverse the convictions and sentences and remand for a new trial.
Reversed.