804 So.2d 609 (2002)
Johnny MILLER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-543.
District Court of Appeal of Florida, Third District.
January 23, 2002.
*610 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Fredericka Sands, Assistant Attorney General, for appellee.
Before GREEN, SHEVIN and RAMIREZ, JJ.
SHEVIN, Judge.
Johnny Miller appeals convictions and sentences for robbery, carjacking and burglary with an assault. We reverse and remand for a new trial.
The events leading to the charges against Miller were disputed. The victims asserted Miller robbed them. However, the credibility of the principal witness was severely impeached. Miller testified that he knew one victim's boyfriend, a marijuana dealer. The boyfriend asked Miller to serve as a go-between for the victim in a marijuana sale. Miller testified that the marijuana was poor, and the sale went bad; he left the victims there and walked away. He guessed the buyers robbed the victims.
At trial, defense counsel attempted to establish Miller's familiarity with drug transactions to substantiate the defense theory that Miller was approached to be the sale middleman. Counsel asked Miller to describe the transaction:
Q. So now you get to the house
A. Yes, sir.
Q. and what happens at that house? Let me ask you this. Why that particular house?
A. Because they sell drugs on the street. Right here they sell drugs on both sides of the street.
Q. And do you know the people there?
A. I don't know them personally, but, you know, I stay on the street and I *611 see them every day, you know, coming and going.
Q. Have you been involved in drug sales before yourself?
A. Yeah, I have sold drugs before, sure.
Q. In fact, you've been arrested and convicted for that before, haven't you?
A. Yes, sure.
Q. So you know where to go to do this kind of thing?
A. Yes, sir.
Q. And you took [the victim] there?
A. Yes, sir. [T-487-88]
Thereafter, over defense counsel's objection, the court permitted the prosecutor to elicit, and amply emphasize to the jury, that Miller had been incarcerated on charges of robbery and burglary, just as in the case at trial.[1] This evidence of similar crimes was brought in, as demonstrated by the prosecutor's insistence and emphasis, to show defendant's propensity to commit crimes. The court abused its discretion in permitting this evidence. Chambers v. State, 742 So.2d 839, 840 (Fla. 3d DCA 1999); Adams v. State, 743 So.2d 1216, 1217 (Fla. 4th DCA 1999).
The state asserts that this questioning was an appropriate response to the defense's attempts to cloud the issue of Miller's previous convictions. This argument is unavailing. As a threshold matter, the prosecutor's questions were not about prior convictions, but rather focused specifically on a prior arrest. The line of questioning does not support the state's assertion that it was setting the record straight on Miller's convictions.
This case does not present the scenario in Fotopoulos v. State, 608 So.2d 784 (Fla. 1992), and McCrae v. State, 395 So.2d 1145 (Fla.1980), where defense counsel's questions were construed as subtle or tactful attempts to downplay and minimize prior convictions. Miller's defense counsel was attempting to establish a background to prove the defense theory, i.e., that Miller was merely a go-between and had not committed *612 the charged offenses. This does not justify the state's offensive cross-examination.
The result of the trial court's improvident overruling of defense counsel's objections was that the prosecutor emphasized to the jury that Miller had been in jail before, and that the incarceration was as a result of similar crimes. This prejudiced defendant's entitlement to a fair trial. Contrary to the state's protestations, the court's error was not harmless. As the Court stated in Czubak v. State, 570 So.2d 925, 928 (Fla.1990), "erroneous admission of collateral crimes evidence is presumptively harmful. Error is only harmless `if it can be said beyond a reasonable doubt that the verdict could not have been affected by the error.'" (Citations omitted). That is not the case here.
We are therefore required to reverse the convictions and remand the matter for a new trial.
This disposition makes it unnecessary to reach the remaining issues defendant raises on appeal.
Reversed and remanded.
NOTES
[1] The objectionable line of questioning follows:

A.... All I know I was supposed to take marijuana, get the marijuana from [the victim] and take it on to the next street where they sell dope at and sell it for her.
[Prosecutor] Q. Do you they [sic] know Jeff Lewis?
A. No, I don't know, sir.
Q. They don't know anything abut this thing you were working on, do they?
A. I don't know, sir.
Q. Why don't you tell the jury about that. You were in jail. Right?
A. Yes.
Q. What were you in jail for?
A. I was in jail for
[Defense counsel]: Objection, relevance.
The Court: Overruled.
The witness: I was in jail forI was acquitted on some charges.
[Prosecutor] Q. What were you in jail for?
A. If you give me a minute, sir, I'll answer the question.
Q. The question was what were you in jail for?
A. I was acquitted for
Q. No. What were you in jail for?
After discussion on defense objections, the questioning continued:
[Prosecutor] Q. What were you in jail for?
A. I was acquitted for
Q. No. Please. What were you in jail for?
A. I was in jail at that time for several charges.
Q. Tell me what they were.
A. Strong armed robbery.
Q. Just like this case. Right?
[Defense counsel]: Objection.
The Court: Overruled.
[Prosecutor] Q. Just like this case. Right?
A. And burglary with an assault.
Q. And burglary with an assault?
A. Uh-huh.
Q. Just like this case?
A. Yes, sir. [T 531-33]