570 So.2d 925 (1990)
Walter Daniel CZUBAK, Appellant,
v.
STATE of Florida, Appellee.
No. 72363.
Supreme Court of Florida.
November 8, 1990.
Rehearing Denied December 26, 1990.
*926 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Walter Daniel Czubak appeals his conviction and death sentence for the first-degree murder of Thelma Peterson. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We reverse the conviction and remand for a new trial.
Czubak was indicted for the murder of Thelma Peterson, with whom he had lived for approximately two months. Peterson had been dead for at least one week and possibly as long as two weeks when her severely decomposed and unclad body was *927 found in the living room of her Zephyrhills home on November 2, 1985. The medical examiner concluded that Peterson had been strangled.
State witness Dorothy Schultz testified that on October 21, 1985, she called Peterson's house looking for Czubak. Peterson told her Czubak did not live there anymore. Schultz called Peterson's house again later, but there was no answer. Later, Czubak called Schultz and told her he would come to her house in a few minutes. When he did not arrive, Schultz again called Peterson's house and Czubak answered.
Czubak arrived at Schultz's house several hours later. He was sweaty, his clothing was stained, and he had three scratch marks on his neck. He arrived in Peterson's car and had numerous items that were later identified as Peterson's. Schultz testified that Czubak said to her, "Babe, you don't know what it's like to live in Hell with that old bitch. We don't have to worry about it anymore." Two days after Peterson's body was found, Schultz and her mother drove Czubak to Tallahassee where he took a bus to an unspecified destination. Czubak was apprehended in Texas.
At trial, Czubak presented three witnesses in defense who testified that Eugene Ragsdale, who is currently charged with murdering another man, had admitted to them that he had killed Thelma Peterson. Notwithstanding, the jury found Czubak guilty and recommended a sentence of death. The trial judge imposed the death sentence.
Czubak raises ten issues on appeal, three of which we address here. First, he claims that the court erred in denying his motion for judgment of acquittal of first-degree murder because of insufficient evidence of premeditation. We reject this claim. The evidence that Peterson was manually strangled and Czubak's comments to Schultz, together with the other evidence surrounding the crime, provided a sufficient basis for the jury to conclude that the murder was premeditated.
Czubak also claims that the trial court erred by refusing to grant a mistrial after key state witness Dorothy Schultz stated during cross-examination that Czubak was an escaped convict. The following dialogue occurred during cross-examination of Schultz:
[Defense Counsel]: After Danny came there that night and you saw these things, these scratches that you claim you saw 
[Schultz]: Sir, I went to the doctor's the next day because I was  that was in the process of getting my teeth out and I went to the doctor's the next day.
[Counsel]: Well, when did it ever  Dorothy, did it ever occur to you that Danny had done something?
[Schultz]: Yes, it did, and I had mentioned it to my Uncle Billy and he was going to have Danny investigated.
[Counsel]: Uncle Billy?
[Schultz]: Yes. William Finch. I asked Uncle Billy not to because I was afraid I would be hurt by what I would find out.
[Counsel]: You would be hurt by Danny or be hurt how? How would you be hurt?
[Schultz]: Be hurt.
[Counsel]: Emotionally?
[Schultz]: By finding out that Danny had done something.
[Counsel]: Well, that's why I am asking you, was it Detective Pierce who put it in your mind?
[Schultz]: No, sir. No, sir. You're wrong.
[Counsel]: I'm wrong?
[Schultz]: You're very wrong. If I had my Uncle Billy turn around and have him investigated, I would have known who he was, an escaped convict. Right? Detective Pierce had nothing to do with my suspicions, which I should have opened my eyes.
Czubak moved for a mistrial. The trial court denied the motion, finding, in essence, that defense counsel solicited the response. On appeal, Czubak argues that the reference to his status as an escaped convict was inadmissible, that he did not solicit the testimony, and that its admission was not harmless error. We agree.
*928 Schultz's reference to the fact that Czubak was an escaped convict was clearly inadmissible. Evidence of collateral crimes, wrongs, or acts committed by the defendant is admissible if it is relevant to a material fact in issue; such evidence is not admissible where its sole relevance is to prove the character or propensity of the accused. § 90.404(2)(a), Fla. Stat. (1987); Castro v. State, 547 So.2d 111, 114-15 (Fla. 1989); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The fact that Czubak was an escaped convict had no relevance to any material fact in issue.
The state argues that Schultz's comment was invited error. Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal. See Pope v. State, 441 So.2d 1073, 1076 (Fla. 1983); Castle v. State, 305 So.2d 794, 797 (Fla. 4th DCA 1974), cert. denied, 317 So.2d 766 (Fla. 1975), aff'd, 330 So.2d 10 (Fla. 1976); Ellison v. State, 349 So.2d 731 (Fla. 3d DCA 1977), cert. denied, 357 So.2d 185 (Fla. 1978). We find that Schultz's comment was not "invited" because it was unresponsive to defense counsel's question. Schultz was the state's key witness. On cross-examination defense counsel was attempting, with some difficulty, to elicit from Schultz whether she suspected that Czubak killed Peterson before Detective Pierce suggested it to her. Counsel could not have anticipated that Schultz would respond by stating that Czubak was an escaped convict. The response was volunteered and totally irrelevant to the question posed.[*]
The state claims that Schultz's' testimony was harmless error. We do not agree. Erroneous admission of collateral crimes evidence is presumptively harmful. Castro, 547 So.2d at 116; Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Error is harmless only "if it can be said beyond a reasonable doubt that the verdict could not have been affected by the error." Ciccarelli v. State, 531 So.2d 129, 132 (Fla. 1988). In view of the fact that the case against Czubak was largely circumstantial, we cannot say beyond a reasonable doubt that the verdict was not affected by the revelation that he was an escaped convict. Accordingly, we reverse and remand for a new trial.
Because this case must be retried on remand, we address one further issue raised on appeal. Czubak argues that the trial court erred by admitting into evidence several particularly gruesome photographs of the victim's body. Peterson had been dead at least a week when her body was found. Eight photographs admitted into evidence showed her severely decomposed and discolored body. Additionally, portions of Peterson's left arm and leg were missing, apparently eaten away by two small dogs that were in the house. One photograph showed a portion of Peterson's carcass with her left arm protruding and her hand eaten away. Other photographs showed Peterson's left leg with the foot missing and the leg bone exposed where the flesh had been eaten away. The photographs are, indeed, gruesome.
This Court has long followed the rule that photographs are admissible if they are relevant and not so shocking in nature as to defeat the value of their relevance. See Bush v. State, 461 So.2d 936, 939-40 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); Williams v. State, 228 So.2d 377, 378 (Fla. 1969). Where photographs are relevant, "then the trial judge in the first [instance] and this Court on appeal must determine whether the gruesomeness of the portrayal is so inflammatory as to create an undue prejudice in the minds of the jury and [distract] them from a fair and unimpassioned consideration of the evidence." Leach v. State, 132 So.2d 329, 331-32 (Fla. 1961), cert. denied, 368 U.S. 1005, 82 S.Ct. 636, 7 L.Ed.2d 543 (1962). We have consistently upheld the admission of allegedly gruesome photographs where they were independently relevant or corroborative of other evidence. *929 See, e.g., Jackson v. State, 545 So.2d 260 (Fla. 1989) (photographs of victims' charred remains admissible where relevant to prove identity and circumstances surrounding murder and to corroborate medical examiner's testimony); Bush v. State, 461 So.2d at 936 (photographs of blowup of bloody gunshot wound to victim's face admissible where relevant to assist the medical examiner in explaining his examination); Wilson v. State, 436 So.2d 908 (Fla. 1983) (autopsy photographs admissible where relevant to prove identity, nature and extent of victims' injuries, manner of death, nature and force of the violence, and to show premeditation); Straight v. State, 397 So.2d at 903 (photograph of victim's decomposed body admissible where relevant to corroborate testimony as to how death was inflicted); Foster v. State, 369 So.2d 928 (Fla.) (gruesome photographs admissible in guilt phase to establish identity and cause of death), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979).
Here, however, the photographs of Peterson's body had little or no relevance. They did not establish identity because the decomposed body was unrecognizable. Peterson's identity was established by the number on the pacemaker removed from her body during the autopsy. The photographs did not reveal any wounds and were not probative of the cause of death. The medical examiner determined the cause of death by examining the victim's neck bones. The photographs did not assist him in explaining the cause of death to the jury. The photographs of the body were not corroborative of other relevant evidence. Although the photographs showed a broken bottle near Peterson's head, the medical examiner could not determine whether she had been hit with the bottle. It is likely that the position of Peterson's body had been disturbed by the dogs, so that the photographs bore little relevance to the circumstances surrounding the murder.
Because of the unusual circumstances presented in this case, we agree with Czubak that the photographs should not have been shown to the jury. The condition of Peterson's body at the time the photographs were taken was the result of the length of time she had been dead and the ravages of the dogs. Thus, the gruesome nature of the photographs was caused by factors apart from the crime itself. Under these circumstances, where the probative value of the photographs was at best extremely limited and where the gruesome nature of the photographs was due to circumstances above and beyond the killing, the relevance of the photographs is outweighed by their shocking and inflammatory nature. The photographs of Peterson's body shall not be admitted on retrial.
We do not address Czubak's remaining points on appeal.
We reverse and remand for a new trial consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] We reject the state's argument that Czubak was required to ask for a curative instruction. A curative instruction would not have overcome the error here.