834 So.2d 923 (2003)
Nathaniel WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-11.
District Court of Appeal of Florida, Third District.
January 15, 2003.
*924 Bennett H. Brummer, Public Defender and Robert Kalter, Assistant Public Defender, for appellant.
Charlie Crist, Attorney General and Michael J. Neimand, Assistant Public Defender, for appellee.
Before LEVY, GREEN and RAMIREZ, JJ.
GREEN, J.
Nathaniel Williams appeals his conviction for second degree murder entered pursuant to a jury verdict and raises two issues. He first argues that the trial court committed reversible error by refusing to allow him to introduce evidence regarding the bad character of an eyewitness after the State allegedly bolstered that witness's character. Additionally, he claims that he was unduly prejudiced by the State's introduction into evidence of a photograph of the victim in full military dress because it evoked sympathy from the jurors, particularly where this case was tried after the "September 11, 2001" tragedy. We disagree and affirm the conviction.
The victim, Daniel Rhodes, was shot and killed on November 27, 1987. Two eyewitnesses identified Williams as the shooter, and a warrant for his arrest was issued. Williams fled and remained a fugitive for thirteen years. In 2000, Williams was arrested in Atlanta, Georgia. He was charged with second degree murder with a deadly weapon.
*925 At trial, both eyewitnesses, Roger Hunt and John Kenzie, verified their out-of-court identifications of Williams as the individual who shot and killed Rhodes. Neither witness could make an in-court identification of Williams during the trial. Additionally, the State presented testimony from Martin Anderson, an acquaintance of Williams, that shortly after the murder, Williams confessed to Anderson that he killed someone. The jury convicted Williams, and he was sentenced to seventeen years in prison.
The State filed a motion in limine prior to trial to preclude defense counsel from cross-examining Roger Hunt about his arrest for aggravated assault. Hunt's arrest, which occurred some time after the 1987 shooting of Daniel Rhodes, resulted in a withhold of adjudication, and the State argued that defense counsel should be precluded from questioning Hunt about whether he had ever been convicted of a felony. The trial court granted the State's motion but ruled that defense counsel could reargue this issue if it became relevant.
During Hunt's testimony, the State established that Hunt had been a member of the police explorer program[1] at the time of the shooting, that he was an ex-security officer, and that at the time of the trial, he was a pastor. Upon cross-examination, defense counsel attempted to question Hunt regarding his expulsion from the police explorers due to his arrest for aggravated assault. The State objected, arguing that because Hunt's arrest resulted in a withhold of adjudication, defense counsel was not permitted to elicit information about it. Defense counsel claimed that the State had attempted to bolster Hunt's character during direct examination when it introduced testimony regarding the police explorers and Hunt's experience as an ex-security guard and a pastor, and that this improper bolstering "opened the door" for defense counsel to raise the arrest for aggravated assault. The trial court sustained the State's objection and denied defense counsel the right to fully cross examine Hunt about his expulsion from the police explorers.
We agree with the trial judge that impeaching Hunt by means of inquiring into the reason behind his expulsion from the police explorers was improper. A withhold of adjudication does not result in the defendant having been "convicted" of an offense as is required to impeach a witness under Florida Rule of Evidence 90.610. McFadden v. State, 732 So.2d 412, 413 (Fla. 3d DCA 1999). Therefore, it was not proper for defense counsel to raise the aggravated assault charge as a method of impeaching Hunt. Moreover, we do not think that the State "opened the door" for the admission of this otherwise inadmissable evidence.
We do agree, however, that the trial court abused its discretion in not permitting the defense to elicit the fact that Hunt had been expelled from the police explorers. This evidence could and should have been elicited without divulging the reason for the expulsion. However, given all of the other evidence as to William's guilt, we cannot conclude that this error necessarily deprived Williams of a fair trial to warrant a reversal.
Williams next argues that he was unduly prejudiced when the State introduced a photograph in which the victim was wearing his full military uniform with an American flag in the background. Williams argues that the photograph evoked sympathy from the jurors during a *926 time when American patriotism and support of the American military were at an all-time high.[2] We disagree.
Trial courts have broad discretion in deciding the admissibility of photographic evidence, and this discretion will not be disturbed absent a clear showing of abuse. See Pangburn v. State, 661 So.2d 1182, 1187 (Fla.1995); Vargas v. State, 751 So.2d 665, 666 (Fla. 3d DCA 2000). A photograph's admissibility is based on its relevancy, not its necessity. Pope v. State, 679 So.2d 710, 713 (Fla.1996). If a photograph is relevant to an issue at trial, either independently or to corroborate other evidence, it is admissible unless the probative value is outweighed by undue prejudice. Allen v. State, 662 So.2d 323, 327 (Fla. 1995); Czubak v. State, 570 So.2d 925, 928-29 (Fla.1990); Kirby v. State, 625 So.2d 51, 53 (Fla. 3d DCA 1993).
The photograph of the victim in this case was admitted by the State for identification purposes only. The victim's military service was never discussed at trial and the State did not attempt to convey that the victim died as a soldier, as Williams contends. Even if the photograph did evoke some sympathy from the jury, it was still not reversible error to admit the picture because it was otherwise relevant to establish identity. See Palmer v. State, 451 So.2d 500, 502 (Fla. 5th DCA 1984)(finding no reversible error in admitting photograph that might inflame the jury's emotions because photograph was otherwise relevant).
We thus affirm the conviction and sentence in this case.
Affirmed.
LEVY, J., concurs.
RAMIREZ, J. (concurring).
I concur in our decision to affirm the conviction and sentence. As the majority opinion states, it was error to prevent defense counsel from eliciting the fact that Roger Hunt had been expelled from the Police Explorers. I have serious reservations, however, about the admissibility of the photograph of the victim, Daniel Rhodes, wearing a uniform, standing in front of the United States flag, with short-cropped hair. I believe that its probative value may have been outweighed by its prejudicial effect, considering that this case was tried a month after the tragic events of September 11, 2001.
Defense counsel argued that the photograph was being used to inflame the jury, to which the prosecutor responded unsatisfactorily that the family had brought the photograph. The photograph, which was admitted as an exhibit in the case, was offered to prove Rhodes' identity because Hunt did not know the name of the victim. When defense counsel suggested that Hunt be shown the autopsy photograph, the prosecution stated that the witness would not be able to recognize the victim. Hunt was never shown the autopsy photograph to confirm the fact that he could not identify Rhodes.
I agree that the trial court has broad discretion to decide on the admissibility of photographic evidence. Defense counsel should have stipulated that the victim was the one without the gun. At that point, it would have been an abuse of discretion to admit the photograph. In the absence of such an offer to stipulate, however, I find *927 no abuse of discretion under the circumstances. At any rate, the photograph did not play a prominent part in the trial.
Trial courts must ensure that criminal defendants receive a fair trial. I believe Williams had a fair trial, but I am concerned that prosecutors may begin to ask families to bring photographs of victims singing in the choir, or posing in their Boy Scout uniforms. Because this case was tried twelve years after the death of the victim, the photograph used may indeed have been the only one available to identify Rhodes. I therefore concur with the majority in affirming the conviction.
NOTES
[1] The police explorers is a part of the Boy Scouts of America. Hunt testified that the program is sponsored by the police to help keep children out of trouble.
[2] Williams was tried in late September, 2001, just weeks after the events of September 11, 2001. Williams' argument in this regard certainly rings hollow given the fact that the delay in this proceeding until September 2001 was largely attributable to his status as a fugitive for thirteen years. He is like the proverbial person who kills his parents and then complains about his orphan status.