PER CURIAM.
Nicholas Agatheas seeks review of Agatheas v. State, 28 So.3d 204 (Fla. 4th DCA 2010), in which the Fourth District Court of Appeal denied Agatheas’s claims of ineffective assistance of counsel and fundamental error with respect to the admission of a 45-caliber revolver. The Fourth District held that the trial court properly admitted the 45-caliber revolver, which was recovered from Agatheas when he was arrested five years after the murder — even though the revolver was indisputably not connected to the crime. The Fourth District concluded that because the revolver was properly admitted, both Agatheas’s ineffective assistance of counsel claim and his fundamental error claim failed. In holding that a gun unrelated to the crime was admissible, the Fourth District’s decision is in express and direct conflict with the Fifth District Court of Appeal’s decision in Moore v. State, 1 So.3d 1177 (Fla. 5th DCA 2009). In Moore, the Fifth District held that the trial court erred in denying Moore’s ineffective assistance of counsel claim where her trial counsel failed to object to the admission of a firearm recovered from Moore’s house as well as photographs of several other firearms, none of which was connected to the charged crime. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We conclude that the Fourth District erred in holding that a gun unrelated to the crime was admissible. Accordingly, we quash the Fourth District’s decision below and approve the Fifth District’s decision in Moore.
I. BACKGROUND
Agatheas was arrested in May 2005 for the July 2000 murder of Thomas Villano. Although there was some evidence connecting Agatheas to the murder shortly after it occurred, there was insufficient evidence to charge him until Agatheas’s former girlfriend, Jessica Krauth, came forward five years after the murder. Krauth testified that she had not originally told police about Agatheas’s admission that he had murdered the victim, because she was afraid of what he might do to her. After Krauth gave her statement, police arrested Agatheas.
When Agatheas was arrested five years after the murder, police found in his possession a backpack containing, among other items, a 45-caliber revolver. At trial, the State introduced the contents of the backpack, which — in addition to the revolver — included a bandana, latex gloves, a flashlight, batteries, a lighter, and a screwdriver. Agatheas’s counsel did not object to the introduction of this evidence.
Krauth testified at trial that in the weeks prior to the July 2000 murder, she had walked into her bedroom to find Aga-theas standing in front of a mirror dressed completely in black. She explained that Agatheas was wearing a bandana over his face and brandishing a revolver. When Krauth laughed at Agatheas’s appearance — which was described as “gangster” — Agatheas became angry and told her, “This is who I am.” Although Krauth did not know what caliber revolver Aga-theas was holding, she testified that she knew he owned a gun that he always kept in a backpack in her closet.
Krauth testified that on the day of the murder, she and Agatheas had a fight, after which Krauth left for work. Aga-theas was gone when Krauth returned home that evening, and shortly after arriving home, Krauth noticed that the backpack in which Agatheas kept his gun was also missing. Krauth was awakened later *1235 that night by a phone call from Agatheas, who asked Krauth to arrange for a friend to pick him up.
Krauth testified that a few nights later, she and Agatheas were watching television when a news story aired about Villano’s murder. Agatheas bragged to Krauth that he had murdered Villano because Vil-lano had raped one of his friends. Aga-theas also admitted that he had accidentally left his T-shirt at the scene of the crime and that after murdering Villano, he had driven Villano’s vehicle around listening to loud music before abandoning it.
Evidence introduced at trial established that police had recovered a black T-shirt containing Agatheas’s DNA at the crime scene, that Villano’s vehicle had been recovered near the pay phone from which Agatheas had called Krauth on the night of the murder, and that the radio in the vehicle was set at a loud volume. The State also introduced latex gloves that police had discovered between the abandoned vehicle and the pay phone that Agatheas had used to call Krauth.
In addition to the contents of Agatheas’s backpack, the State introduced a tape recording of police interviewing Agatheas shortly after the murder. During the interview, Agatheas admitted that he had previously owned other handguns, including at least one 38-caliber revolver. A repair receipt from a local gun shop— along with testimony by the gun shop owner and an investigating officer — established that Agatheas had owned a 38-caliber revolver around the time of the murder. Jennifer Gray, the forensic scientist who analyzed bullet casings recovered from the crime scene, testified that the bullets were consistent with being fired from 38-caliber revolver. The murder weapon was never recovered.
Agatheas was convicted by a jury of first-degree murder and was sentenced to life in prison. Agatheas appealed his conviction to the Fourth District, claiming that his counsel was ineffective for failing to object to the introduction of the 45-caliber revolver and the other contents of the backpack. Agatheas argued that his ineffective assistance of counsel claim should be addressed on direct appeal for the first time because the facts giving rise to his claim were apparent on the face of the record. Agatheas also claimed that the introduction of the revolver was highly prejudicial and that it was fundamental error for the trial court to admit the revolver into evidence.
The Fourth District affirmed Agatheas’s conviction and sentence, holding that because defense counsel had attacked Krauth’s credibility, the 45-caliber revolver and the bandana found in Agatheas’s backpack during his 2005 arrest were properly admitted as relevant to corroborate Krauth’s testimony. Agatheas, 28 So.3d at 207. The Fourth District held that the latex gloves found in the backpack were also admissible because similar gloves had been discovered on the path from the abandoned car to the pay phone that Agatheas used to call Krauth on the night of the murder. See id. The Fourth District also held that the trial court erred in admitting the remaining contents of the backpack — the flashlight, batteries, lighter, and screwdriver — because the State did not connect them to the murder; however, “the erroneous admission of these items did not undermine confidence in the outcome of the cause and ... the admission of the evidence was harmless.” Id. at 208. The Fourth District concluded that because the admission of each piece of challenged evidence was either proper or amounted to harmless error, it was unnecessary to address Agatheas’s fundamental error claim. Id.
*1236 Agatheas now claims that the Fourth District erred in its assessment of the admissibility of the revolver found in the backpack and therefore erred in denying his claims of fundamental error and ineffective assistance of counsel.[1]
II. ANALYSIS
The issue we first consider is whether the admission of a gun recovered from a backpack that Agatheas had in his possession five years after the murder was erroneous when the gun had no connection to the charged crime. We have previously held that in order for evidence of a firearm to be admissible as relevant in a criminal trial, “the State must show a sufficient link between the weapon and the crime.” Jackson v. State, 25 So.3d 518, 528 (Fla.2009) (holding that testimony regarding a “little pistol” defendant carried was inadmissible where nothing in the record linked the “little pistol” to the gun used in the crimes charged). As the Fifth District recognized in Moore v. State, 1 So.3d 1177, 1178 (Fla. 5th DCA 2009), the basic rule that has been consistently followed by our appellate courts is that “if there was no evidence linking any of these firearms to the charged crime, evidence of the firearms would be irrelevant, and should have been excluded upon proper objection.”
More recently, in Green v. State, 27 So.3d 731, 737 (Fla. 2d DCA 2010), the Second District Court of Appeal held that the trial court erred in admitting three firearms found in the defendant’s home two days after the murder, none of which was tied to the charged offenses in any way. The State had argued, similar to the State in this case, that the firearms were relevant to corroborate witness testimony. Id. The State had asserted that “the firearms were relevant to corroborate the co-defendants’ testimony that Green had firearms at his home and that they went to Green’s house specifically to obtain firearms to use in the burglary.” Id. As to two of the three firearms, which were found in the bedroom of the defendant’s roommate, the Second District held that they were “completely irrelevant” because “[t]he fact that Green’s roommate possessed two .380 semiautomatic firearms that were not connected to the charged offenses did not tend to prove or disprove any material fact in controversy and thus had absolutely no relevance whatsoever.” Id. at 737-38. Accordingly, the Second District concluded that “those firearms should not have been admitted into evidence under any theory.” Id. at 738.
As to the remaining firearm, which was found in the defendant’s bedroom, the Second District held that it was “marginally relevant” because it “would tend to render the proposition that the codefendants went to his house to get a firearm more probable.” Id. However, the Second District then conducted the important balancing test under section 90.403, Florida Statutes, and determined that “any probative value of the firearm ... was outweighed by the danger of unfair prejudice.” Id.[2] Utilizing *1237 the weighing test set forth in section 90.403 and the criteria set forth in Steverson v. State, 695 So.2d 687, 689 (Fla.1997), the Second District emphasized that evidence “requiring] an extended chain of inferences to be relevant or that suggests an improper basis for the jury’s verdict should be excluded.” Green, 27 So.3d at 738. The Second District concluded that “any possible probative value of [the] firearm ... was outweighed by the possibility that the jurors would improperly rely on this evidence to determine that since Green owned this .380 handgun, he must have owned another one that he used to commit the charged crimes.” Id.
In contrast to Green, the Fourth District in this case not only failed to evaluate the prejudicial effect of the evidence, but also failed to properly apply the law in holding that the 45-caliber was relevant. Here, the 45-caliber revolver was in no way connected to the murder. It is uncontested that the 45-caliber revolver was not the murder weapon. Instead, the Fourth District found it “relevant to corroborate [Krauth’s] testimony” and “relevant to her credibility.” Agatheas, 28 So.3d at 207. However, while Krauth’s credibility was in dispute, evidence that Agatheas carried a gun that could not possibly be the murder weapon in his backpack five years after the crime simply is not relevant to either the crime or Krauth’s credibility.
Krauth’s testimony centered on the events near the time of the crime — five years prior to Agatheas’s possession of the gun at issue — and her reasons for waiting five years to tell the police about Aga-theas’s admission. In holding that this completely unrelated gun was admissible, the Fourth District violated the clear rule that “the State must show a sufficient link between the weapon and the crime.” Jackson, 25 So.3d at 528. Moreover, “a significant time difference” between the crime and when the defendant possessed the gun affects whether the evidence is possibly relevant. Id. at 529.
There is no question that generally the evidence of the gun found five years later and unconnected to the crime would be completely irrelevant under our case law and basic evidentiary principles. The Fourth District nevertheless reasoned that the gun became relevant in order to “corroborate [Krauth’s] testimony” because she was impeached. Agatheas, 28 So.3d at 207. The question becomes whether the Fourth District’s reasoning survives legal scrutiny. The theory would be that the State was permitted to introduce extrinsic evidence (in this case the gun in the backpack) to support its witness’s credibility about what that witness observed five years earlier. On the subject of when extrinsic evidence is properly admitted to support a witness’s credibility regarding a matter on which the witness was impeached, Professor Charles Ehrhardt explains:
In determining whether extrinsic evidence is admissible to bolster credibility, counsel must determine which of the various types of impeachment were used by the opposing counsel. If there is evidence introduced to contradict the testimony of a witness, or the witness is contradicted on cross-examination, counsel may generally introduce evidence to contest the truthfulness of the alleged contradicting facts. For example, if counsel introduces extrinsic evidence that the witness and a party are busi *1238 ness partners in order to attack the credibility of the witness by showing an interest in the outcome of the litigation, the opposing counsel may offer evidence to prove that the alleged business relationship does not exist.
Charles W. Ehrhardt, Florida Evidence § 611.2 (2010 ed.) (footnote omitted).
Here, the gun found in Agatheas’s backpack five years after the crime was not related to any of the matters on which Krauth was impeached. Krauth was impeached as to the following: her memory, her bias, and her prior inconsistent statements to law enforcement. Specifically, on cross-examination, defense counsel highlighted that Krauth could not remember the dates or the months during which the events occurred. Defense counsel elicited from Krauth that Agatheas was talking to an ex-girlfriend at the time when he and Krauth were dating and that this upset Krauth. Defense counsel also questioned Krauth about her prior inconsistent statements to the police, in which she did not tell them about Agatheas’s admission, and inquired about her reasons for waiting so long to come forward to the police even though she had not had contact with Aga-theas for years.
Nor was the 45-caliber revolver relevant to matters raised on redirect. On redirect, the State established that Krauth had not seen Agatheas in years and had since moved on with her life and, thus, this was not a situation in which she felt scorned or angry. Rather, she was scared of Aga-theas, which was the reason she waited so long to tell the police about his admission.
The next day, through the direct examination testimony of the lead investigator, the State introduced evidence that a gun was found in Agatheas’s possession at the time of his arrest, as well as the other items found in the backpack:
STATE: Okay, and when [Agatheas] was taken into custody, was there a particular item that was in his possession?
INVESTIGATOR: A backpack.
STATE: Okay. Now what did [Krauth] indicate to you about the backpack, regarding the backpack?
INVESTIGATOR: That Nicholas Aga-theas always had a backpack at the residence and usually carried his guns within the backpack.
[[Image here]]
STATE: ... What do you see that’s in State’s Exhibit 122 E [a photograph of the backpack and its contents]?
INVESTIGATOR: A firearm, bullets, the backpack, playing cards, gloves, a flashlight, a screwdriver, a lighter, batteries, a bandana.
STATE: And, what type of gun was in his possession?
INVESTIGATOR: I think it was a Smith & Wesson 45-caliber, I believe.
Although the State referenced Krauth’s testimony when introducing evidence of the gun, this extrinsic evidence was unrelated to her testimony or to the matters on which she was impeached.
Additionally, all of the cases cited by the Fourth District to support its conclusion that evidence of the gun was admissible address the admissibility of photographs that were clearly relevant to the crime, specifically photographs of the victim or the crime scene. See Czubak v. State, 570 So.2d 925, 928-29 (Fla.1990) (discussing whether gruesome photographs of the victim’s body were admissible); Williams v. State, 834 So.2d 923, 925-26 (Fla. 3d DCA) (addressing the issue of whether a photograph of the victim wearing a full military uniform with an American flag in the background was admissible), quashed in part on other grounds, 863 So.2d 1189 (Fla. *1239 2003); Kirby v. State, 625 So.2d 51, 53-54 (Fla. 3d DCA 1993) (examining whether photographs of the crime scene were admissible). These cases are clearly inappo-site. The photographs at issue in Czubak, Williams, and Kirby were clearly relevant to the crime, and the court in those cases focused on whether the photographs were relevant and, if so, whether the photographs were so inflammatory as to create undue prejudice or improperly generate sympathy for the victim.[3] Here, the gun was irrelevant to the crime, Krauth’s testimony, and the matters on which she was impeached.
Simply put, none of the cases cited by the Fourth District stands for the proposition that corroboration of a witness’s testimony by extrinsic evidence, no matter how tenuous, is in itself relevant to prove a material fact. Because the gun was not linked to the crime and not otherwise relevant to Krauth’s credibility, it was not relevant to a material fact at issue. This is contrasted to other evidence properly introduced by the State that corroborated Krauth’s testimony, such as telephone records and a black T-shirt found at the crime scene that contained Agatheas’s DNA.
We emphasize that the mere fact that Krauth was impeached by the defense did not open the door to any and all otherwise inadmissible extrinsic evidence. The job of the defense lawyer is to cross-examine the State’s witness to raise questions about his or her credibility. Section 90.608, Florida Statutes (2006), specifies the permissible methods of impeachment, including by introducing the witness’s inconsistent statements or showing that the witness is biased. If simply cross-examining a witness opens the door to permitting the State to introduce extrinsic evidence to “corroborate” the witness’s testimony on any matter, even those that were not the subject of cross-examination, such an exception would eviscerate the extremely important proposition that evidence of bad character, prior bad acts, or propensity is generally inadmissible. Just as we have explained that the State cannot rely on the law of impeachment- to introduce impermissible prior crime's evidence, see Robertson v. State, 829 So.2d 901, 913 (Fla.2002), the State likewise cannot rely on the concept of “corroboration” to introduce through the back door clearly inadmissible evidence of a gun unrelated to the crime.
Under the facts of this case, the only possible relevance of the 45-caliber revolver would be to demonstrate Aga-theas’s bad character or propensity. However, it is axiomatic that evidence of collateral crimes, wrongs, or acts committed by the defendant is not admissible where its sole relevance is to prove the bad character or propensity of the accused. See Wright v. State, 19 So.3d 277, 291-92 (Fla.2009) (“[C]ollateral-crime evidence, such as bad acts not included in the charged offenses, is admissible when relevant to prove a material fact in issue, but is inadmissible when the evidence is relevant *1240 solely to prove bad character or propensity.”); see also Czubak, 570 So.2d at 928; Castro v. State, 547 So.2d 111, 114-15 (Fla.1989). In fact, this Court has consistently held that the erroneous admission of irrelevant collateral crimes evidence “is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt.” Robertson, 829 So.2d at 913-14 (quoting Castro, 547 So.2d at 115); see also Czubak, 570 So.2d at 928 (holding that collateral crime evidence that defendant was an escaped convict was presumptively harmful).
In addition, even assuming evidence that Agatheas possessed a different gun five years after the crime was relevant to a material fact in issue, the Fourth District failed to perform the critical balancing analysis under section 90.403. Evidence is inadmissible “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. Here, the confusing and misleading effect of the 45-caliber revolver substantially outweighs any probative value, rendering it inadmissible.
The testimony at trial established that the murder weapon was never recovered, that Agatheas gave conflicting accounts regarding the whereabouts of the gun he owned before the murder, and that the murder weapon could have been one of several calibers, such as “a .38 Special, .357, nine-millimeter, and .380.” By introducing a weapon entirely unconnected to the crime charged, the State further confused the already unclear evidence regarding the murder weapon. This confusion was compounded by the fact that the State introduced the contents of Agatheas’s backpack — including the 45-caliber revolver — a full day after Krauth’s testimony and through the direct-examination testimony of the lead investigator in the case.
The misleading effect of the 45-caliber revolver is evidenced by the State’s reference to the gun during its closing argument. At closing, the State claimed that the 45-caliber revolver recovered from Agatheas was “just like” the type of weapon used in the murder, only “a little bigger.” While this statement indicates that the 45-caliber revolver was similar to— even almost identical to — the type of gun used in the murder, evidence at trial indisputably ruled out the 45-caliber revolver as the murder weapon.
Because the evidence of the gun found upon Agatheas’s arrest was inadmissible, and because any purported relevancy was substantially outweighed by the danger of confusing the issues and misleading the jury, the admission of the 45-caliber revolver, the photographs of the gun, and testimony regarding the gun was unquestionably error.
We next discuss the remaining contents found in Agatheas’s backpack when he was arrested, photographs of which were introduced at trial. The Fourth District held that the bandana found in the backpack was admissible under the same theory of relevance as the 45-caliber revolver. See Agatheas, 28 So.3d at 207. We disagree. Krauth testified that she saw Agatheas wearing a bandana in the weeks before the murder. However, there was no evidence that the bandana recovered from Agatheas’s backpack in 2005 was the same bandana that Krauth saw Agatheas wearing before the murder. Further, there was no evidence that Aga-theas wore a bandana when he committed the murder. Because the bandana bears no relevance to either the crime or Krauth’s credibility, the Fourth District also erred in holding that the bandana was admissible.
*1241 We also disagree with the Fourth District that the latex gloves recovered from Agatheas’s backpack were relevant and admissible. Although latex gloves were discovered in the area between the abandoned vehicle and the pay phone Aga-theas used to call Krauth on the night of the murder, there was no evidence that the gloves found by the abandoned vehicle were used during the murder. There was likewise no evidence that the latex gloves found in Agatheas’s backpack five years later were the same kind of gloves. Moreover, the latex gloves were recovered from Agatheas’s backpack nearly five years after police discovered the latex gloves between the abandoned vehicle and the pay phone. See Jackson, 25 So.3d at 529 (noting that the “significant time difference” between the crime and the evidence at issue factored into the finding that the evidence was irrelevant). The fact that Agatheas owned latex gloves five years after the murder was simply not relevant to the crime.
The Fourth District, however, was correct in holding that the remainder of the backpack’s contents — the flashlight, batteries, lighter, and screwdriver — were improperly admitted into evidence at trial. No evidence at trial connected any of these items to the murder.
Although the Fourth District held that the error in admitting the remaining items from the backpack did not undermine confidence in the outcome and did not constitute reversible error, the cumulative effect of all of the trial court’s errors must be considered in light of our holding today. See Penalver v. State, 926 So.2d 1118, 1137 (Fla.2006) (noting that where multiple errors exist, appellate courts must consider whether the cumulative effect of those errors deprived the defendant of fair trial).
III. CONCLUSION
For the foregoing reasons, we quash the Fourth District’s decision affirming the trial court’s admission of the 45-caliber revolver, bandana, and latex gloves. We remand to the Fourth District for reconsideration of Agatheas’s claims in light of our holding.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.

. Agatheas also raises the claim that in light of the federal charges facing his counsel before and during Agatheas’s trial, the trial court committed reversible error by failing to ensure that Agatheas made a knowing and intelligent waiver of his right to conflict-free counsel. Because the Fourth District did not specifically address this claim, and it is outside the scope of the conflict issue, we decline to address it. See Kasischke v. State, 991 So.2d 803, 815 (Fla.2008) (declining to decide issue that the district court did not address and that was outside the scope of the conflict). However, this issue may be relevant to a claim of ineffective assistance of counsel, which we do not reach.

. Section 90.403 provides in relevant part: "Relevant evidence is inadmissible if its probative value is substantially outweighed by the *1237 danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.”

. Czubak, 570 So.2d at 929 (concluding that the photographs of the victim’s body had little or no relevance because they could not establish identity, were not probative as to the cause of death, and bore little relevance to the circumstances surrounding the murder, and that any relevance was outweighed by the shocking and inflammatory nature of the photographs); Williams, 834 So.2d at 926 (holding that because the photograph of the victim was for identification purposes only and the victim’s military service was never discussed at trial, even if the photograph did evoke sympathy from the jury, it was not reversible error to admit it); Kirby, 625 So.2d at 53-54 (holding that the photograph of the crime scene was relevant because it helped to explain and corroborate the victim’s testimony and that it was not so inflammatory so as to create undue prejudice in the minds of the jurors).