GROSS, J.
The main issue we address on this appeal is whether admission of evidence about a gun recovered at the time of a defendant’s arrest was error, where the gun was not the one used in the crime charged. We hold that admission of the gun was relevant; it was connected to the homicide charged because it directly corroborated material testimony of a key witness about what happened to the murder weapon.
Lawrence Johnson was convicted of first degree murder and armed robbery with a firearm. The victim was a clerk at a gas station; he was shot three times. Shell casings from a nine millimeter gun were recovered from the gas station. After the police released a surveillance camera’s images of the robbery, witness Joy James came forward. She identified one suspect as Johnson and the other as “Block.”
James provided a number of details implicating “Block” and Johnson in the murder. She testified that Johnson had confessed to her that he had been involved in the incident at the gas station; he asked the victim for cigarettes and all the money, ripped off the victim’s chain, and shot the victim after he resisted and tried to fight. Johnson told James that he had shot the victim a total of three times. Significant *1068 to this case, James testified that on the day she talked with Johnson, he had a 45 caliber gun, but that he told her he had used a nine millimeter gun at the gas station. She said that Johnson showed her the 45 caliber gun and explained the difference between the two guns to her. She said that Johnson sold the nine millimeter gun and purchased the 45 caliber gun in its place. She told the police that Johnson fled to Alabama after the news broadcast of the information about the robbery.
Florida detectives travelled to Alabama to arrest Johnson with the help of the United States Marshal’s Office. They found him at his mother’s house hiding under a sink. A search of the house also uncovered a 45 caliber firearm. Johnson denied his involvement in the robbery and stated that his only relationship with James was that he sold drugs for her and owed her money. He further claimed that he had moved to Alabama to avoid the debt he owed to James.
Johnson argues that the trial court improperly admitted photographs of the 45 caliber handgun and ammunition found at his mother’s house in Alabama where he was arrested. He contends that because the murder weapon was a nine millimeter and not a 45 caliber, the evidence of the gun found in Alabama was irrelevant and unduly prejudicial under section 90.403, Florida Statutes (2010).
Photographs of the 45 caliber gun were admissible at trial; “some part of the evidence at trial linked the seized item to the crime charged.” O’Connor v. State, 835 So.2d 1226, 1230 (Fla. 4th DCA 2003). The evidence corroborated James’s testimony that Johnson told her he had sold the nine millimeter gun and obtained a 45 caliber gun. James was a crucial state witness; she provided many facts implicating Johnson in the murder. Her testimony explained what happened to the murder weapon and why it was not recovered. The recovery of the 45 caliber gun at the time of Johnson’s arrest supported that testimony about the murder weapon.
The direct corroboration of a material fact contained in James’s testimony is what distinguishes this case from cases like O’Connor, Downs v. State, 65 So.3d 594 (Fla. 4th DCA 2011), and Agatheas v. State, 77 So.3d 1232 (Fla.2011). For example, in O’Connor, there was nothing to connect the evidence of a certain gun to the crime at issue. 835 So.2d at 1231. There the “murder was by a handgun with nine millimeter ammunition, not a shotgun, and nothing in the evidence connected the shotgun to the homicide.” Id. Without any connection to the underlying crime, the defendant’s possession of a shotgun 36 days after the shooting was not relevant to prove any material fact. Id.
Similarly, in Agatheas the state introduced evidence of a 45 caliber revolver recovered from a defendant at the time of his arrest five years after a homicide. 77 So.3d at 1234-35. The murder weapon was likely a 38 caliber revolver. The key state witness, the defendant’s former girlfriend, came forward five years after the homicide and identified the defendant as the perpetrator. Id. at 1234. She testified that the defendant had “bragged” about murdering the victim. Id. at 1235. She said nothing about the murder weapon. She did not testify that the defendant talked to her about the murder weapon and what he did with it. Nothing in her testimony explained why no murder weapon had ever been recovered. The former girlfriend knew only that the defendant “owned a gun that he always kept in a backpack in her closet.” Id. at 1234.
The Supreme Court held that evidence of the gun recovered from the defendant’s backpack at the time of his arrest, which *1069 was not related to the crime, was both irrelevant and unduly “confusing and misleading” under section 90.403. Id. at 1237, 1240. The gun “was indisputably not connected to the crime.” Id. at 1234. While the former girlfriend’s credibility was in dispute, evidence that the defendant “carried a gun that could not possibly be the murder weapon in his backpack five years after the crime simply [was] not relevant to either the crime or [the girlfriend’s] credibility.” Id. at 1237. Such “extrinsic evidence was unrelated to her testimony or to the matters on which she was impeached.” Id. at 1238.
In contrast, in this case, evidence of the 45 caliber gun was related to a central fact in James’ testimony — that Johnson had told her he sold the nine millimeter gun used to commit the homicide and purchased a 45. The testimony about the 45 caliber gun explains the absence of the murder weapon at trial and corroborates James’ story. The “danger of unfair prejudice, confusion of the issues [or] misleading the jury” did not “substantially outweigh” the probative value of this evidence. Unlike the situation in Agatheas, the evidence was not confusing or misleading because the state offered the recovered gun to explain the absence of the murder weapon, not to suggest generally that the defendant had possessed the murder weapon because he was a gun owner.
Johnson also argues that the trial court erred in allowing a detective to testify that Johnson was the person depicted in the gas station surveillance video and still photographs extracted from it. This detective had an extensive opportunity to observe Johnson in person in Alabama shortly after the crime was committed. After his arrest, Johnson changed his appearance by gaming weight and bleaching his skin. Under these circumstances, the detective’s testimony was properly admitted, because how Johnson looked at the time of the crime was outside the realm of the jurors’ knowledge and experience and the detective’s special familiarity with Johnson was of assistance to the jury. See Hardie v. State, 513 So.2d 791 (Fla. 4th DCA 1987) (finding no error in officers’ identification on videotape based on “their prior knowledge and contacts” with the defendant); cf. Ruffin v. State, 549 So.2d 250 (Fla. 5th DCA 1989) (holding that officers’ identification of the defendant on a videotape of the crime invaded “the province of the jury”). Also, unlike Hardie, there was not the danger that the detective’s knowledge of Johnson came from criminal conduct unrelated to the ease; she was one of the officers present for the Alabama arrest, a matter properly before the jury. 513 So.2d at 793-94.[1]

Affirmed.

POLEN and LEVINE, JJ., concur.

. This case is distinguishable from Charles v. State, 79 So.3d 233 (Fla. 4th DCA 2012) on its facts. Charles did not involve a defendant who had changed his appearance since the time of the crime. The detective making the identification in Charles had no “special familiarity” with the defendant and initially was not able to identify the defendant on the videotape. Id. at 235.