# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-4051

_____

MARTESHA WILLIAMS JOHNSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Alachua County.
William E. Davis, Judge.

December 11, 2024

ROWE, J.

Martesha Williams Johnson appeals her convictions for first-degree murder and attempted first-degree murder while possessing a firearm. She argues that the trial court erred in allowing testimony about her AR-15 and ammunition. Johnson also asserts that her defense counsel was ineffective for his failure to investigate whether a co-defendant received nonverbal cues from her counsel during her testimony at trial. We affirm.

*Procedural History*

Johnson, Doug Cantrel Heath, and Jasmine Webb were implicated in the first-degree murder of T.B. and the attempted

first-degree murder of D.W. Webb agreed to testify against Heath and Johnson, who were tried together.

Before trial, Johnson moved in limine to exclude testimony about her owning an AR-15 style weapon and ammunition. Johnson argued that the evidence was not relevant because she lawfully possessed the weapon and the weapon was not used in the crime. Johnson also argued that the testimony would be unduly prejudicial. The court granted the motion in limine, but it explained that the evidence could be admissible if the State laid a proper foundation as to relevance and showed that the evidence would not be unduly prejudicial.

*Trial*

Johnson, Heath, and Webb maintained a three-person romantic relationship. Heath and Webb were together for about fifteen years and had three children. Johnson became involved with Heath and Webb a few months before the shooting. Then, when Webb and Heath were on a break, Webb began a sexual relationship with one of the victims, D.W.

When Heath learned about Webb's relationship with D.W., he became enraged. He used Webb's mobile phone to call D.W. and demanded to know if D.W. was involved with Webb. D.W. was hosting a barbecue at his house when he received Heath's call. D.W. denied being involved with Webb. But when D.W. heard what sounded like someone hitting Webb and her crying in the background, he admitted to Heath that he was in a sexual relationship with Webb. Heath became angrier and told D.W. that he knew where D.W. lived.

After the phone call, Heath paced around his home before grabbing his guns and placing them in the back of his truck. Webb insisted that she did not know what Heath was planning. Even so, Webb rode along in Heath's truck as he drove to Johnson's house. On the way, Webb heard Heath call Johnson to ask for her gun clip. After Heath and Webb arrived at Johnson's house, the trio left in two vehicles: Heath drove his truck, and Johnson and Webb followed Heath in Johnson's minivan. Two of Johnson's children were passengers in the minivan. Both cars stopped at a

convenience store, and Webb switched cars to ride along with Heath.

Heath used the data on Webb's phone to locate and drive to D.W.'s home. As they neared D.W.'s home, the trio left Johnson's minivan (with her children inside) on the side of the road. Webb then drove Heath's truck, with Johnson in the front passenger seat and Heath in the back seat. Heath told Webb to drive slowly as they passed D.W.'s home. Webb then saw Heath shoot an AR-15 out of the back window of the truck. Johnson, jumping in excitement, said "shoot, daddy, shoot!" Webb stated when she heard the shooting, she hit the gas pedal to drive away.

D.W. testified that he saw a truck matching the description of Heath's truck drive by D.W.'s house. D.W. then heard gunshots. D.W. dove to the ground and avoided injury. But T.B., who was attending the barbeque at D.W.'s home, suffered a gunshot wound to his arm and chest. T.B. died at the scene. D.W. said the shooting occurred about an hour after he argued with Heath over the phone.

A deputy testified that Heath and Webb were found with a Mazda Tribute. A search of the vehicle yielded multiple firearms, including an AR-15 style weapon and magazine. Defense counsel objected to the State's pursuit of this line of questioning based on the pretrial motion in limine and lack of foundation. The court overruled the objection. The deputy then explained that the AR-15 style weapon could fire the ammunition found in Johnson's car. He noted that the firearm's manufacturer was "somewhat unusual," and that during a police interview, Johnson stated that she owned a weapon by that manufacturer. Even so, the deputy could not prove that the AR-15 found in the Mazda belonged to Johnson. And he agreed that it was not the murder weapon. Pictures of the AR-15 were admitted into evidence over defense counsel's objection that the State failed to link the firearm to Johnson. The court overruled the objection.

3

The jury found Johnson guilty of first-degree murder and attempted first-degree murder while possessing a firearm.[*] The court sentenced her to consecutive terms of life in prison. This timely appeal follows.

*Analysis*

Johnson first argues that the trial court erred when it allowed the deputy's testimony about the AR-15 and ammunition. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006). Johnson argues that the evidence was not relevant and that it was unduly prejudicial.

For the evidence to be considered relevant, the State had to prove a link between the weapon and the charged crimes. *Agatheas v. State*, 77 So. 3d 1232, 1236 (Fla. 2011). Even then, the court had to determine whether the relevance of the evidence was outweighed by the danger of confusion or unfair prejudice. *Green v. State*, 27 So. 3d 731, 738 (Fla. 2d DCA 2010).

We hold that the trial court did not err when it found that the evidence about Johnson's AR-15 was relevant and not unduly prejudicial. The State presented evidence linking Johnson's AR-15 and ammunition to the crimes charged. Although the AR-15 was not the murder weapon, the evidence showed that projectiles recovered from the scene of the shooting were consistent with the ammunition found in Johnson's car during the search by police. The evidence on the firearm and ammunition also corroborated testimony that Heath asked Johnson to give him an extra magazine for an AR-15 right before they drove to D.W.'s house. Thus, the evidence was relevant because the jury could infer that Johnson provided ammunition to Heath to use in an AR-15 style weapon just before they drove to the victim's house. And

---

[*] The jury also returned a guilty verdict for Heath. Heath appealed his judgment and sentence. This court affirmed on direct appeal. *Heath v. State*, 1D2022-4126, 2024 WL 3049519 (Fla. 1st DCA June 19, 2024).

4

considering the link to the crimes charged, the evidence was not unduly prejudicial.

But even if the trial court erred by admitting the evidence, any error was harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."). The evidence showed that Johnson knew that Heath had argued with D.W. after Heath discovered that Webb and D.W. were in a sexual relationship. As Heath drove to D.W.'s house to confront him, Heath called Johnson and asked her to give him an AR-15 magazine. Johnson got into her car with her children as passengers and followed Webb and Heath to D.W.'s neighborhood. Johnson then left her car on the side of the road, with her children still inside. Johnson got into Heath's truck with Heath and Webb. She was armed when she entered the truck.

Webb drove the truck to D.W.'s house. Johnson was in the front passenger seat, and Heath was in the back seat. Heath told Webb to drive slowly as she passed D.W.'s house. Heath then shot at D.W.'s house with an AR-15 out the back window of the truck. During the shooting, Johnson eagerly directed Heath to "shoot, daddy, shoot!" Heath, Johnson, and Webb returned to Johnson's car. Johnson then tried to elude arrest—she bought bleach for cleanup, left her children with her mother, and left town for several days.

Johnson next argues that her trial counsel was ineffective for failing to investigate whether nonverbal cues from Webb's counsel influenced Webb's trial testimony. After Webb testified and was removed from the courtroom, the court informed the attorneys that a bailiff observed what appeared to be nonverbal communication between Webb and her counsel, Muna Abraham, during Webb's testimony. Abraham denied any intentional communication with Webb. Johnson's counsel asked Webb if she saw Abraham shaking her head or making any movements, and Webb responded in the negative. Webb also denied answering any questions based on Abraham's actions. Johnson's counsel then stated that she had no

5

other questions for Webb or her counsel. And Johnson stated that she was satisfied with her counsel's decision to not further pursue the issue.

Johnson now argues that her defense counsel was ineffective for failing to properly investigate the allegation of silent communication between Webb and her counsel. But this argument is not cognizable on direct appeal because Johnson does not allege or show that fundamental error occurred. *See Steiger v. State*, 328 So. 3d 926, 929 (Fla. 2021) ("[B]ased on the plain language of section 924.051(3), unpreserved claims of ineffective assistance of counsel cannot be raised or result in reversal on direct appeal because the statute requires the more demanding showing of fundamental error."); *Knight v. State*, 350 So. 3d 442, 445 (Fla. 1st DCA 2022) (declining to address a claim of ineffective assistance of counsel on direct appeal that did not allege that fundamental error occurred). The record also refutes Johnson's claim of ineffective assistance of her trial counsel. Johnson stated on the record that she agreed with counsel's decision to not further investigate the allegation of improper influence by Webb's counsel. *See Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) ("An appellant is not entitled to go behind sworn representations made to the court.").

We, therefore, AFFIRM Johnson's convictions and sentences.

KELSEY and LONG, JJ., concur.

—————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

—————————————

David Maldonado of The Maldonado Law Firm, P.A., Lakeland, for Appellant.

Ashley Moody, Attorney General, and Kristie Regan, Assistant Attorney General, Tallahassee, for Appellee.