# Third District Court of Appeal

## State of Florida

Opinion filed October 1, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1574
Lower Tribunal No. F21-20128
_____

**Ty-ree Dixon,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carmen Cabarga, Judge.

Rier Jordan, P.A., and Jonathan E. Jordan, for appellant.

James Uthmeier, Attorney General, and David Llanes, Assistant Attorney General, for appellee.

Before LOGUE, LINDSEY, and BOKOR, JJ.

LOGUE, J.

Ty-ree Dixon appeals his convictions and sentences for one count of second-degree murder with a weapon, two counts of attempted second-degree murder with a weapon, and one count of possession of a firearm by a convicted felon, arising from a drive-by shooting that occurred on January 2, 2021.[1] Dixon bases his appeal on the fact that the jury was accidently provided a document not in evidence indicating Dixon was a convicted felon. We affirm because no contemporaneous objection or motion for new trial was made below, and this admittedly grave error does not rise to the level of being fundamental under the existing standard. In so ruling we do not foreclosure other remedies that might be available to Dixon.

## **Background**

This appeal arises from a January 2, 2021 drive-by shooting that resulted in the death of Johnquaveis Davis and gunshot wounds to Ja'cari Mullins and Troydarius Scott. In connection with the shooting, Dixon was charged with one count of second-degree murder with a weapon as to Davis,

---

[1] Dixon also appeals his conviction and sentence on a second count of possession of a firearm by a convicted felon. This additional count for possession was based on law enforcement recovering a firearm at an apartment where Dixon resided when executing a search warrant on May 17, 2021. This May 17, 2021 possession count was severed from the remaining counts and tried separately before a different judge and jury. Finding no reversible error in that proceeding, we affirm without further discussion.

two counts of attempted second-degree murder with a weapon as to Mullins and Scott, and one count of possession of a firearm by a convicted felon. The firearm possession count was bifurcated from the charges for second-degree murder and attempted second-degree murder but was scheduled to be tried before the same judge and jury. Thus, in phase one of the trial, the second-degree murder and two attempted second-degree murder charges were tried, and in phase two, the firearm possession was tried.

Prior to the commencement of the bifurcated trial proceeding, Dixon signed a stipulation intended to be used only in phase two of the trial relating to the firearm possession charge. The stipulation stated he "had previously been convicted of a felony." He agreed to the stipulation to avoid further evidence of the exact nature of his felony coming into evidence. As this stipulation pertained only to phase two of the trial, it was never entered into evidence or read to the jury during phase one of the trial.

Following the close of the evidence in phase one, the jury retired to deliberate and returned with a guilty verdict on all three charges. After the jury had reached its verdict, the trial court, the lawyers, and the parties learned for the first time that the stipulation was accidentally given to the jury in the jury room so that the jury had access to it when it reached the verdict convicting Dixon on the second-degree murder and attempted second-

3

degree murder charges. Upon discovering this, the trial court advised it would add a question to the verdict form submitted to the jury during the second phase of the trial which asked:

**SPECIAL INTERROGATORY**

During your deliberations, did any of the jurors see a document called Joint Stipulation which referred to Ty'ree Dixon being a convicted felon.

Neither party objected to the use or wording of the special interrogatory.

The trial court proceeded to the second phase of the trial on the felon in possession count. The jury found Dixon guilty, and it replied "yes" to the special interrogatory. When reviewing the jury's answer, however, the trial court acknowledged the special interrogatory should have asked whether the jury saw the convicted felon stipulation "during the first phase [of the trial on the second-degree murder and two attempted second-degree murder charges]." The trial court nevertheless concluded: "But, folks, they saw it. It was also rumpled, which means it had been touched."

Dixon was thereafter sentenced to concurrent terms of (1) life in prison as a prison releasee reoffender and under the 10-20-Life statute as to the second-degree murder count; (2) 30 years in prison as a prison releasee reoffender and under the 10-20-Life statute as to the two attempted second-degree murder counts; and (3) 15 years in prison with a three-year minimum

4

mandatory as a habitual felony offender as to the felon in possession of a firearm count.

At no point did Dixon's counsel object, move for a new trial based on what had occurred, or ask that the jury be polled as to whether the stipulation was considered during its deliberations on phase one of the trial.

This appeal followed.

## Analysis

Dixon argues that fundamental error occurred when the jury was given the stipulation, not in evidence, which advised the jury that he was a convicted felon.

"Generally, in order to raise an issue on appeal, it must be presented to the trial court, and the 'specific legal argument or ground to be argued on appeal must be part of that presentation.'" Chiu v. Wells Fargo Bank, N.A., 242 So. 3d 461, 463 (Fla. 3d DCA 2018) (quoting Holland v. Cheney Bros., Inc., 22 So. 3d 648, 649-50 (Fla. 1st DCA 2009)). However, "an unpreserved error may be reviewed on appeal . . . if it rises to the level of fundamental error." Jaimes v. State, 51 So. 3d 445, 448 (Fla. 2010). The question of whether an error is fundamental is reviewed de novo. State v. Smith, 241 So. 3d 53, 55 (Fla. 2018).

5

Evidence of collateral crimes is normally excluded from evidence for good reason. "The reason we do not generally let a jury consider prior offenses is out of fear that the information might improperly persuade the jury that the defendant likely committed the offense for which he or she is currently on trial." Williamson v. State, 894 So. 2d 996, 998 (Fla. 5th DCA 2005). See also Young v. State, 641 So. 2d 401, 403 n.4 (Fla. 1994) (noting "the trial court must also protect the defendant's presumption of innocence by withholding from the jury any allegations or facts about the alleged prior . . . offenses"). In fact, the admission of collateral crimes is presumptively harmful. See, e.g., Czubak v. State, 570 So. 2d 925, 928 (Fla. 1990) ("Erroneous admission of collateral crimes evidence is presumptively harmful.").

However, "not all harmful error is fundamental." Reed v. State, 837 So. 2d 366, 370 (Fla. 2002). And an appellate court should "exercise its discretion under the doctrine of fundamental error very guardedly." Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970). "Fundamental error is error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Hayward v. State, 24 So. 3d 17, 41 (Fla. 2009) (quoting Simpson v. State, 3 So. 3d 1135, 1146 (Fla. 2009)). "[T]o establish fundamental error, it

would have to be shown that 'the error of the trial judge necessarily and inescapably produced the ultimate jury verdict' and that the error 'permeate[d] or saturate[d] the trial' with 'basic invalidity.'" Knight v. State, 286 So. 3d 147, 151 (Fla. 2019) (quoting Brown v. State, 124 So. 2d 481, 484 (Fla. 1960)).

Turning to the instant case, any unauthorized information that resulted from the error of placing the stipulation in the jury room did not permeate the trial. The fact that Dixon was a convicted felon was not featured, emphasized, argued, or even mentioned at trial. Nor can it be said that "a verdict of guilty could not have been obtained without the assistance of the alleged error" in light of the evidence of Dixon's guilt which, although not otherwise detailed in this opinion, included a surveillance video of the shooting; telephone records placing Dixon in the area of the shooting; proof that the car used in the shooting had been rented by Dixon and contained bullet casings from the weapons used in the shooting; photographs of Dixon with the handgun used in the shooting; and various texts and monitored telephone calls tying him to the shooting, among other evidence.

The two main cases relied upon by Dixon, furthermore, did not address fundamental error where no objection was made below. In Banos v. State, 521 So. 2d 302 (Fla. 3d DCA 1988), the jury while deliberating was exposed

7

to unauthorized material containing a reference to a severed count. The defendant moved for a mistrial, which was denied. We reversed referring to the incident as "fundamentally improper." But in Banos, an objection was lodged and therefore the question of the existence of fundamental error, as in the case before us, was not at issue in that case.

In Meixelsperger v. State, 423 So. 2d 416 (Fla. 2d DCA 1982), where the prosecutor's trial brief was taken into the jury room and the bailiff observed at least one juror examining it, the appellate court reversed a conviction because subjecting the jury to such extraneous influence was "fundamentally improper." The opinion, however, did not address whether an objection had been made below. As such, the opinion cannot be read as addressing "fundamental error" in the sense at issue here.

Accordingly, because Dixon failed to demonstrate "fundamental error," we must affirm.

Affirmed.