ORFINGER, C.J.
Erie Proctor appeals his convictions of two counts of uttering a forged check and two counts of third-degree grand theft. On appeal, Proctor argues that the court erred when it allowed a detective to identify him as the man cashing two stolen checks after comparing the bank’s surveillance video and Proctor’s photo and signature found in a state driver’s license database. We agree and reverse for a new trial.[1]
Two stolen checks, endorsed with the name “Eric Proctor,” were cashed at a SunTrust Bank. Detective Garrett Lane received the checks and a video of the transactions from the bank. The videotape showed an African American man endorsing the checks. The man presented *314 a Florida driver’s license for identification. Using the Florida “Driver and Vehicle Information Database” (“DAVID” system), Detective Lane determined that the driver’s license number written on the checks was invalid. However, he did find an “Eric Proctor” in the DAVID system with a driver’s license number several digits off from the number noted on the checks. Based on his review of Proctor’s photo contained in the DAVID system, and the surveillance -video obtained from the bank, Detective Lane concluded that Proctor was the individual shown on the bank videos. Detective Lane also concluded, after reviewing Proctor’s signature on file in DAVID and the signature on the two forged checks, that they were written by the same person, although he had no special training in handwriting analysis and was not familiar with Proctor’s signature. The two tellers, who cashed the checks, did not know and could not identify Proctor at trial as the person who presented the checks.
Prior to trial, Proctor filed a motion in limine to prevent Detective Lane from testifying that Proctor’s photo and signature contained in the DAVID database depicted the same person shown in bank video and the signatures on the two stolen checks. The trial court denied Proctor’s motion and allowed Detective Lane to testify during trial that Proctor was the person shown in the bank surveillance video:
A Looking at his [DAVID] record, I realized that Eric Proctor in this photograph, is a black male with short hair and a salt and pepper colored mustache. He is listed as being 6-feet tall and he was born in 1957.
Based on his photograph as it appears here and some of his other information, it appeared to me that he was the person pictured on that video.
Detective Lane further opined that based on his investigation, which included the comparison of the signature contained in DAVID with the signatures on the stolen checks, Proctor was the individual shown in the video passing the two checks:
Q Sir, we left off talking about the signature on the check versus the signature in the [DAVID] record. Did you, in the course of your investigation, observe those two signatures?
A Yes.
Q And what did those two signatures lead you to believe?
A That they were written by the same person.
[[Image here]]
Q Based upon your investigation, who is the individual in the video passing the checks?
A Eric Proctor.
Q And that is the defendant?
A The defendant, yes sir.
The jury found Proctor guilty on the four charged counts. Proctor filed a timely motion for new trial, arguing that Detective Lane’s opinion testimony regarding the identity of the person shown in the video cashing the checks and the disputed signatures on the two checks was improper and prejudicial. After the court denied the motion, this appeal followed.
Relying on Ruffin v. State, 549 So.2d 250 (Fla. 5th DCA 1989), Proctor argues that this Court should reverse his convictions. In that case, the State offered a videotape of a drug purchase by an undercover police officer. Over objection, three police officers, who were not present at the undercover transaction testified that, in their opinion, Ruffin was the man on the tape. Id. at 251. This Court held that the testimony invaded the province of the jury:
When factual determinations are within the realm of an ordinary juror’s knowl *315 edge and experience, such determinations and the conclusions to be drawn therefrom must be made by the jury. [The three officers] were not eyewitnesses to the crime, they did not have any special familiarity with Ruffin, and they were not qualified as any type of experts in identification.
Id. (citation omitted); see Charles v. State, 79 So.3d 233 (Fla. 4th DCA 2012) (holding detective’s opinion testimony that defendant was person depicted in surveillance video invaded province of jury; detective was not eyewitness, had no special familiarity with defendant, and was not otherwise qualified as expert in video identification); Edwards v. State, 583 So.2d 740 (Fla. 1st DCA 1991) (reversing when officer, who employed informant to make controlled videotaped buy from appellant, but who did not witness buy firsthand, testified “he recognized appellant as the person shown on the tape making the sale to” informant).
As in Ruffin, Charles and Edwards, in this case, Detective Lane was not an eyewitness to the crime, had no special familiarity with Proctor, and was not otherwise qualified as an expert in video identification. The jurors should have been allowed to determine for themselves whether Proctor was the person shown in the surveillance video. Cf. Johnson v. State, 93 So.3d 1066 (Fla. 4th DCA 2012) (finding no error in officers’ identification on videotape based on their prior knowledge of defendant).
Similarly, Detective Lane should not have been permitted to testify that after comparing the signatures in the DAVID documents with the signatures on the bank checks, he believed “that [the checks] were written by the same person.” Detective Lane was not sufficiently familiar with Proctor’s handwriting to form a reliable opinion, and candidly admitted that he was not an expert in handwriting comparison. See Clark v. State, 114 So.2d 197, 203 (Fla. 1st DCA 1959) (reiterating that lay witness can identify person’s handwriting if witness is sufficiently familiar with handwriting to form reliable opinion but familiarity could not have been acquired for purpose of litigation); Charles W. Ehrhardt, Evidence, § 901.4, at 1057 (2011 ed.) (explaining that section 92.38, Florida Statutes, which allows jury comparison of disputed writing with genuine exemplar, has been construed to permit jury comparison only where expert or skilled witness has testified that disputed writing and exemplars were written by same person).
The error in admitting the detective’s identification and handwriting comparison testimony was not harmless. “[E]rror in admitting improper testimony may be exacerbated where the testimony comes from a police officer.” Martinez v. State, 761 So.2d 1074, 1080 (Fla.2000). There is the danger that jurors will defer to what they perceive to be an officer’s special training and access to background information not presented during trial. Id. After reviewing the record in its entirety, we cannot say beyond a reasonable doubt that the detective’s testimony did not influence the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.”).
REVERSED and REMANDED for a NEW TRIAL.
SAWAYA and TORPY, JJ„ concur.

. We find no merit in Proctor’s remaining issue on appeal.