# Supreme Court of Florida

————————

No. SC2023-0807

————————

**JUAN JAVIER OQUENDO,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

October 9, 2025

FRANCIS, J.

This case concerns Florida's self-defense standard and whether evidence of a defendant's post-traumatic stress disorder (PTSD) is relevant to his claim of self-defense. The Second District Court of Appeal certified conflict between its decision in *Oquendo v. State*, 357 So. 3d 214 (Fla. 2d DCA 2023), and the First District Court of Appeal's decision in *State v. Mizell*, 773 So. 2d 618 (Fla. 1st DCA 2000), on the question of whether expert testimony about a defendant's PTSD is ever legally relevant to a self-defense theory. The Second District held that evidence of PTSD is categorically

irrelevant given that self-defense turns on a reasonably prudent person standard, i.e., what a reasonably prudent person would do under the circumstances. *Oquendo*, 357 So. 3d at 221. The First District, on the other hand, approved the admission of expert PTSD testimony in support of a self-defense theory where the trial court placed strict limitations on the use of such evidence, similar to those imposed upon the use of expert testimony concerning battered spouse syndrome. *Mizell*, 773 So. 2d at 620 (citing *State v. Hickson*, 630 So. 2d 172, 173 (Fla. 1993)). The First District based its decision on the language in the standard jury instruction on self-defense requiring the jury to find that the defendant "actually believed that the danger was real." *Id.* at 621 (citing Fla. Std. Jury Instr. (Crim.) 3.04(d)).[1]

We have jurisdiction to resolve this conflict. *See* art. V, § 3(b)(4), Fla. Const.[2] In doing so, we recognize that a showing of

---

1. Between the time *Mizell* was decided in 2000 and *Oquendo* was decided in 2023, the standard criminal jury instruction on self-defense was renumbered from 3.04(d) to 3.6(f). *See* Fla. Std. Jury Instr. (Crim.) 3.6(f).

2. Though we may reach extra issues when appropriate, *see* Fla. R. App. P. 9.120(f); *State v. Ivey*, 285 So. 3d 281, 284 (Fla. 2019), we decline to reach the second issue raised by Oquendo

- 2 -

self-defense legally involves both an objective component, to which the reasonable person standard applies, and a subjective component, which leaves room for the admission of other relevant evidence establishing the overall circumstances. As to the objective component, we agree with the Second District that evidence of PTSD is categorically irrelevant. But to the extent PTSD evidence may be relevant to the subjective component of a defendant's self-defense theory, we disapprove the Second District's decision in *Oquendo* and approve the First District's decision in *Mizell.* However, because we find no reversible error in the outcome of this case, we ultimately approve the result in *Oquendo* and uphold Oquendo's conviction and sentence.

## I. Background

Juan Javier Oquendo was charged with first-degree murder for the fatal shooting of James Cason in 2015 outside a bar in Pinellas

---

regarding jury instructions because it is outside the scope of the conflict issue and was not expressly addressed by the Second District's decision, *see Agatheas v. State*, 77 So. 3d 1232, 1236 n.1 (Fla. 2011) ("Because the Fourth District did not specifically address this claim, and it is outside the scope of the conflict issue, we decline to address it.").

County where Oquendo's sister worked. Oquendo, a regular at the bar, was playing pool and talking to his sister on the night of the shooting. After he went into a restricted area of the bar, he was told to leave. He left and did not seem upset as he did so.

The victim, Cason, had also been drinking at the bar that night and was intoxicated.[3] Cason left a few minutes before Oquendo came out, according to a former security guard outside the club who described himself as an "associate[]" of Cason's. That security guard testified that when Oquendo exited the bar, Oquendo grabbed him from behind in a bear hug and said, "You lucky I like you." After that, the security guard saw Oquendo pacing back and forth at the side of the building and said he seemed agitated.

The security guard testified that a short time after his encounter with Oquendo, Cason's car pulled up, and Cason blew his horn to signal to Oquendo to get out of the way. Oquendo went to the driver's side of Cason's car and grabbed the door handle. Cason let down the window and said, "What are you doing?  This is my car[.]" Oquendo said, "Oh, my bad.  I thought this was my

---

3. The medical examiner testified that Cason's blood alcohol level was .118, above the legal limit of .08.

friend['s] car because he has a car like this." The two exchanged words. Oquendo then took a pool stick he had out of its case and jabbed it into Cason's window. Cason said, "Don't worry about it. I got something for you. I'll be right back."

The testimony of the trial witnesses differed as to what happened next, which the Second District summarized as follows:

> Oquendo testified that he saw the victim reach over and produce a gun. He tried to knock the gun from the victim's hand with his pool stick. Oquendo grabbed the victim's arm. He took the gun from the victim, then the gun went off inside the vehicle once or twice. He did not know that the victim had been shot; the victim's vehicle began moving forward, and Oquendo thought that he was going to be shot or run over. So, Oquendo said that he fired the weapon several times toward the vehicle.
>
> Other witnesses recounted the events differently. One witness who claimed to be nearby heard someone say, "I got mine." Another heard the victim say: "Don't worry about it. I got something for you. I'll be right back." One witness testified that he saw Oquendo punch into the car and hit the driver. Then Oquendo pulled out a gun and started shooting. Another witness testified that he saw Oquendo poke his pool stick into the vehicle; no gun was in his hand when that occurred. However, the witness said that he was sure that Oquendo did not pull a gun from the victim's hand and that there was no struggle over a gun at any point; the gun came from Oquendo's person. The witness saw Oquendo pull the trigger and fire a shot at the victim. Another witness testified that after the first shot was fired, the victim's vehicle moved forward and hit a parked car.

*Oquendo*, 357 So. 3d at 216.

- 5 -

According to the Second District, the physical evidence showed the gun was fired from a short distance and there were multiple bullet holes in Cason's vehicle:

> The medical examiner testified that the victim died after sustaining a single gunshot wound to the head, above his left ear. The gun was fired from one and a half to two feet away from the victim. Crime scene technicians located multiple bullet holes in the victim's vehicle as well as twelve shell casings.

*Id.* Additionally, according to the testimony of Horace Lee, Oquendo admitted that he also had a gun:

> After the shooting, Oquendo fled. He went to the home of Horace Lee, who dated Oquendo's mother when Oquendo was young. Lee testified that Oquendo told him "[t]hat he shot someone." Oquendo also told Lee, "His gun didn't go off, mine did."

*Id.* (alteration in original).

Though Oquendo maintained that the gun accidentally went off during the struggle with Cason, the jury was instructed on self-defense. Ultimately, the jury acquitted Oquendo of first-degree murder and convicted him of the lesser included offense of manslaughter. The jury also found that Oquendo carried, used, or displayed a firearm during commission of the offense. The Second District affirmed Oquendo's manslaughter conviction on appeal.

### A. Unadmitted Expert Testimony on PTSD

One of the major issues raised by Oquendo on appeal was whether the trial court properly denied his request to present expert testimony from clinical and forensic psychologist Dr. Jethro Toomer, who would have opined that Oquendo suffered from PTSD. During a pretrial proffer, Dr. Toomer testified that he reached this conclusion after interviewing Oquendo and evaluating him using a number of tests, in addition to observing Oquendo's behavior and examining his personal history, which included familial abandonment in childhood, having witnessed three people he knew being killed, having been kidnapped, and having been mugged at least twice. Dr. Toomer opined that Oquendo had suffered from PTSD "for some time," including the night of the shooting.

Dr. Toomer also explained that PTSD results when an individual is exposed to stressors, situations, or an environment "that is threatening and that may, at times, create[] risk and the threat of harm and loss of life." PTSD causes an individual's overall functioning to be impaired "cognitively, behaviorally, [and] emotionally," so these individuals "don't weigh alternatives," "project consequences," "manage conflicted data," or "learn from

past experiences." This means that behaviorally, these individuals are "impulsive" and "unable to . . . assess situations appropriately and come to rational conclusions," and their "instinct for survival remains elevated and is easily triggered." Dr. Toomer explained that, under substantial stress, an individual suffering from PTSD is more likely to perceive a situation as threatening and to act on impulse and without thinking.

Dr. Toomer agreed that Oquendo had only reported his version of events: that Cason produced a gun, that Oquendo gained control of the gun, and that the car started moving. Also, Oquendo did not admit to Dr. Toomer that he intentionally pulled the trigger and shot Cason.

The trial court denied Oquendo's request to admit Dr. Toomer's testimony. In so doing, the court rejected Oquendo's argument that a defendant's perceptions are relevant to the issue of self-defense under the First District's holding in *Mizell,* and found that Dr. Toomer actually gave no opinion on the issue of self-defense. The trial court found that Oquendo offered Dr. Toomer's testimony only to show that Oquendo had PTSD and that this would carry a risk of confusing the jury about the significance of

diminished capacity.[4] The trial court also noted that the language of the self-defense instruction in Florida Standard Criminal Jury Instruction 3.6(f) refers to what a defendant "reasonably believed" and what "the reasonabl[y] cautious and prudent person" would have done. Finally, the court noted that Oquendo never admitted to intentionally shooting Cason, which is generally required to claim self-defense. Thus, the court refused to admit Dr. Toomer's opinion about Oquendo's PTSD, reasoning that the testimony would not assist the jury in making its decision.

### B. The Conflict Opinions

Oquendo challenged the trial court's ruling on the admissibility of Dr. Toomer's testimony on appeal. The Second District found no error in the exclusion of Oquendo's proffered expert testimony on PTSD because it determined that such evidence

---

4. The trial judge cited to *State v. Storer*, 920 So. 2d 754 (Fla. 2d DCA 2006), as the basis for this conclusion. The court appears to have focused on *Storer*'s description of *Mizell* as the First District "declin[ing] to quash the [pretrial] order [admitting PTSD evidence under specific conditions] *despite the risk* that the evidence might confuse the jury about the significance of diminished capacity." *Id.* at 759 (emphasis added).

is not relevant to the reasonable person standard required by

Florida's jury instruction on self-defense:

> Use of evidence of a disorder affecting a defendant's perceptions would necessarily be—as it was here—in support of a theory that the defendant's belief was more reasonable to him than it might have been to one not suffering from such a disorder.  Such use, premised as it is on the defendant's subjective comprehension of the situation, is incompatible with the objective standard of reasonableness required to support the justification of self[-]defense.

*Oquendo*, 357 So. 3d at 217.[5]  In doing so, the Second District

certified conflict with the First District's decision in *Mizell* and

thoroughly examined that case.  Thus, we find it helpful to first

thoroughly discuss *Mizell* to clarify *Oquendo*'s disagreement with it.

---

5.  The Second District also noted that "[a] theory of defense that the firearm discharged accidentally is not necessarily inconsistent with a theory of self[-]defense (and therefore does not categorically preclude a self[-]defense instruction)." *Oquendo*, 357 So. 3d at 217 (citing *Williams v. State*, 588 So. 2d 44, 45 (Fla. 1st DCA 1991)); *see also Williams*, 588 So. 2d at 45 ("[W]here there is evidence indicating that the accidental infliction of an injury and the defense of self[-]defense or defense of another are so intertwined that the jury could reasonably find that the accident resulted from the justifiable use of force, an instruction on self[-]defense or defense of another is not logically precluded.").

### 1. *Mizell*

In *Mizell*, the First District denied the State's petition for writ of certiorari seeking review of a pretrial order allowing Mizell, a Vietnam veteran, to present evidence of PTSD "under certain limited conditions" in his trial for attempted second-degree murder, in which he was claiming self-defense. 773 So. 2d at 619.[6] Mizell quarreled with the victim, Benny Hayes, at the nearby home of a mutual friend, and Hayes made threats and derogatory comments to Mizell. *Id.* Mizell attempted to avoid Hayes and left several times when Hayes reappeared at the home. *Id.* Eventually, Mizell, who had been drinking, fell asleep on the couch near the home's open front door; he "awoke to find Hayes standing over the couch saying, 'You son-of-a-bitch, I'm going to cut your throat.'" *Id.* At that point,

> Hayes then placed a hand into his pocket. Seeing this, Mizell picked up a stick and hit Hayes. Mizell claims he then went blank, and the next thing he remembers is seeing Hayes very bloody. The arrest report indicates that Mizell hit Hayes several times. Hayes was rendered unconscious by the attack, and he also lost several teeth.

---

6. Mizell "experienc[ed] several disturbing incidents" while in Vietnam, which led to a diagnosis and treatment for PTSD. *Id.*

*Id.* at 619-20.

Mizell intended to offer expert testimony from Dr. Harry Krop, a clinical psychologist, to explain (a) that Mizell has PTSD, (b) what PTSD is, and (c) how it affects a person's perceptions. *Id.* at 620. The State filed a motion in limine to prevent the introduction of this expert testimony. *Id.* The trial court denied the motion but provided five specific conditions that must be met in order for Mizell to offer the testimony:

> 1. [Mizell] must lay a predicate by testifying[.]
> 2. Thereafter, Dr. Krop may testify as to the Post[-] Traumatic Stress Disorder.
> 3. Dr. Krop may reveal [Mizell's] alleged background but may not vouch for it.
> 4. Dr. Krop may not refer to the Battered Wife's Syndrome.
> 5. Dr. Krop may not offer an opinion as to the validity of self-defense in this case.

*Id.*

On certiorari review, the State argued, first, that Mizell sought to introduce the testimony as diminished capacity evidence to negate the requisite criminal intent, and, second, that even if it was not diminished capacity evidence, it was inadmissible because it was irrelevant to the question of self-defense. *Id.* The First District rejected the first argument, finding that the PTSD evidence was

- 12 -

being offered by Mizell as "state-of-mind evidence, quite analogous to battered spouse syndrome (BSS) testimony that has in fact been approved many times." *Id.* (citing *Hickson*, 630 So. 2d at 173). The First District also rejected the State's second argument, holding instead that "PTSD evidence is relevant on the question of self-defense." *Id.* at 621. As the First District explained,

> The standard jury instruction for self-defense, which the trial judge quoted during the hearing, indicates that a defendant's perceptions are relevant when assessing applicability of self-defense. *See* Fla. Std. Jury Instr. (Crim.) [3.04(d)] ("Based upon appearances, the defendant must have actually believed that the danger was real."). The cases that admit evidence of BSS do so to help the jury understand why the victim would subjectively fear increased aggression against her. *See Hawthorne v. State*, 408 So. 2d 801, 806-07 (Fla. 1st DCA 1982) ("The expert testimony would have been in order to aid the jury in interpreting the surrounding circumstances as they affected the reasonableness of her belief . . . that because she suffered from the syndrome, it was reasonable for her to have remained in the home and at the pertinent time, to have believed that her life and the lives of her children were in imminent danger.").

*Id.*

The First District also noted that the trial court's five conditions would avoid any danger of the psychologist's testimony presenting Mizell's testimony "by the backdoor" to avoid cross-

- 13 -

examination by the State. *Id.* The conditions also prohibited using the psychologist's testimony to improperly bolster Mizell's version of events. *Id.*

## 2. *Oquendo*

In *Oquendo*, the Second District took issue with the First District's conclusion in *Mizell* that the self-defense standard in Florida includes a subjective component, explaining that

> [t]he First District's conclusion does not follow from its premise, in part because its rationale was based on an incomplete analysis of the self-defense jury instruction. *See id.* (relying on the jury instruction's admonition that "[b]ased upon appearances, (defendant) must have actually believed that the danger was real." (quoting Fla. Std. Jury Instr. (Crim.) [3.04(d)]). Of course, it is true that a defendant's *perceptions* are relevant—*what* he ascertained with his senses constitutes the circumstances under which he was required to assess whether the threat justified the use of force he exerted. However, that does not make the self-defense test a subjective one, and it does not follow that a defendant's *misperceptions*—his misunderstanding of reality as altered by a disorder such as PTSD—are relevant. The self-defense jury instruction not only requires that the defendant have "actually believed that the danger was real" but also that his belief was objectively reasonable: "The danger need not have been actual; however, . . . the appearance of danger must have been so real that *a reasonably cautious and prudent person under the same circumstances* would have believed that the danger could be avoided only through the use of that [force] [or] [threat of force]." Fla. Std. Jury Instr. (Crim.) 3.6(f) (brackets in original) (emphasis added). Evidence that a defendant's

perceptions might have been altered by a condition such as PTSD—or that his tendency to perceive danger was uniquely heightened compared to others who do not suffer from such a condition—is not probative of what a reasonably cautious and prudent person under the same circumstances would have believed to be the extent of the danger or lack thereof. *Cf.* § 90.401, Fla. Stat. (2015) ("Relevant evidence is evidence tending to prove or disprove a *material* fact." (emphasis added)).

Evidence of Oquendo's PTSD would only go to show that his reaction was objectively *unreasonable* by virtue of a potential *misperception* of the dangerousness of the situation—i.e., that something others would not deem to be dangerous appeared to him to be so. *Cf.* § 776.012(2) (providing a justification for a defendant's use of force "if he or she *reasonably* believes" his or her use of force was necessary (emphasis added)).

357 So. 3d at 218.

The Second District also held that Oquendo's proffered PTSD evidence was properly excluded as inadmissible diminished capacity evidence, since "[a]llowing admission of evidence of the defendant's unique mental state when it is not relevant to a permissible defense or justification could invite confusion and potentially mislead the jury to excuse acts for which a defendant is culpable under the law." *Id.* at 219.

Finally, the Second District rejected the reasoning in *Mizell* that the admissibility of battered spouse syndrome evidence supports finding that PTSD evidence is relevant to self-defense. *Id.*

- 15 -

The Second District reasoned that the admissibility of battered spouse syndrome to support a theory of self-defense is "not for the purpose of justifying a defendant's misperception of reality or to explain why an unreasonable belief was nonetheless justifiable due to her condition," but rather

> to show why the defendant's actions were *reasonable*—to show that in spite of a reasonable perception of danger from the battering spouse, the battered defendant would remain in the home with her batterer where she may resort to the exertion of force against him to prevent imminent death or great bodily harm.
> Thus, unlike PTSD evidence, battered-spouse syndrome evidence does not tend to show that a sufferer's perceptions were impaired or altered by the condition; rather, it goes to show that while a defendant's perception of the danger was reasonable, her choice to remain in the dangerous situation—despite the risk she would have to exert force to protect herself—was also reasonable.

*Id.* at 219-20 (citations omitted).

Thus, the Second District in *Oquendo* certified conflict with the First District's decision in *Mizell*.

## II. Analysis

Whether Florida's self-defense standard is solely governed by the objective reasonable person standard or also encompasses a subjective component that may allow evidence of PTSD is a pure

question of law that we review de novo.  *Cf. State v. Floyd*, 186 So. 3d 1013, 1019 (Fla. 2016) (noting that whether a standard criminal jury instruction on self-defense is misleading with respect to the duty to retreat is a pure question of law subject to de novo review). To the extent we consider the correctness of the trial court's ruling that Oquendo's expert testimony on PTSD was inadmissible, we review for an abuse of discretion.  *See Twilegar v. State*, 42 So. 3d 177, 194 (Fla. 2010) ("As a general rule, a trial court's ruling concerning the admissibility of evidence will be sustained on review absent an abuse of discretion.").

In resolving the interdistrict conflict, we first examine the statutory definition of self-defense in section 776.012(2), Florida Statutes (2015).  We then examine the text of Florida Standard Criminal Jury Instruction 3.6(f) governing self-defense and cases interpreting that language.  Based on this review, we conclude that the self-defense standard in Florida includes a subjective component as well as an objective component and approve the First District's conclusion in *Mizell*.[7]  However, because the trial court

_____

7. The State argues that the defense waived this issue.  We reject the State's waiver argument without further discussion.

did not abuse its discretion in refusing to admit the expert PTSD testimony, we conclude that the Second District was nevertheless correct to affirm Oquendo's conviction.

### A. Section 776.012(2)

Section 776.012(2), Florida Statutes (2015), provides the following requirements for self-defense:

> A person is justified in using or threatening to use deadly force <u>if he or she reasonably believes</u> that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.

(Emphasis added.)

Section 776.012(2) provides that a person's use of deadly force is justified as self-defense "if he or she reasonably believes" that the use of that force is necessary to prevent imminent death or great bodily harm. The plain text of the statute requires *both* that "he or she . . . believe[d]" that the use of force was necessary (actual subjective belief of the defendant) and that the belief was "reasonabl[e]" (objective reasonable person standard). 40 C.J.S. *Homicide* § 214 (2014) ("[W]hen self-defense has been asserted, the defendant is entitled to have the jury consider the facts and

- 18 -

circumstances known to the defendant (i.e., his or her subjective belief), but those facts and circumstances must be balanced against what a reasonable person would believe under the same or similar circumstances, the ultimate test of 'reasonableness' being objective." (footnote omitted)). Thus, the First District was correct in *Mizell* that there is both a subjective and objective component to the self-defense standard.

### B. Florida Standard Criminal Jury Instruction 3.6(f)

The language of the standard jury instruction on self-defense also supports this conclusion. Florida Standard Criminal Jury Instruction 3.6(f), which was included in the jury instructions at Oquendo's trial, provides that "[t]he use of deadly force is justifiable if [the defendant] reasonably believed that the force was necessary to prevent imminent death or great bodily harm to [himself]." (Brackets in original.) The standard instruction further provides:

> In deciding whether [the defendant] was justified in the use or threatened use of deadly force, you must consider the circumstances by which he was surrounded at the time the force or threat of force was used. The danger need not have been actual; however, to justify the use or threatened use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could

be avoided only through the use of that force or threat of force.  Based upon appearances, [the defendant] must have actually believed that the danger was real.

(Brackets removed; emphasis added.)  Thus, the standard instruction supports that the jury must find that the defendant had an actual subjective belief that deadly force was necessary in self-defense in addition to finding that that belief was reasonable.[8]

Apart from *Mizell,* other Florida appellate opinions have recognized that Florida's self-defense standard includes both a subjective and an objective component.  In *Raneri v. State,* the First District noted that in order to qualify as self-defense, "the slayer must actually and reasonably believe that it is necessary to act in order to save his own life or that of a member of his family from death or great bodily harm in order to constitute justification."  255 So. 2d 291, 294 (Fla. 1st DCA 1971) (citing *Harris v. State,* 104 So. 2d 739 (Fla. 2d DCA 1958)); *see also Harris,* 104 So. 2d at 743 (explaining that a person has a right to act in self-defense, "even to

---

8.  This hybrid test, including both a subjective and objective component, is the most common among U.S. jurisdictions.  40 C.J.S. *Homicide* § 214 (2014) ("Generally, the standard of self-defense is a hybrid test, combining both an objective and subjective standard.").

the extent of taking life if he actually believes, and the circumstances and surrounding conditions are such that a reasonably cautious and prudent person would believe, danger of death or great personal injury to be imminent, at the hands of assailant").

Likewise, in *Filomeno v. State*, the Fifth District Court of Appeal held that the trial court erred in ruling inadmissible expert testimony concerning the "fight or flight" response that the defendant sought to introduce to show that "in some highly stressful situations, an individual's perception of danger may impel them to 'fight,' when they perceive that they are being prevented from 'flight.' " 930 So. 2d 821, 822 (Fla. 5th DCA 2006). The Fifth District found that at least some of the proffered evidence was not diminished capacity evidence but rather "state-of-mind evidence, analogous to battered spouse syndrome testimony that has been approved many times." *Id.* (citing *Mizell*, 773 So. 2d at 620). The Fifth District noted that "[t]he standard jury instruction for self-defense recognizes that a defendant's perceptions of the surrounding events are relevant when assessing the reasonableness of the use of force in self-defense." *Id.*

In addition to *Mizell* and its progeny, the United States Court of Appeals for the Fifth Circuit[9] in reviewing the habeas petition of a defendant sentenced to life in prison in Florida noted that "to establish self-defense under Florida law a person must show that there existed reasonable grounds for him to believe that 'he (was) in imminent danger of death or great bodily injury' and that he actually held that belief when he acted." *Phillips v. Wainwright*, 624 F.2d 585, 589 (5th Cir. 1980) (citing *Raneri*, 255 So. 2d at 294).

Even the Second District's opinion below recognized that "a defendant's *perceptions* are relevant" in that "*what* he ascertained with his senses constitutes the circumstances under which he was required to assess" whether the use of force in self-defense was necessary. *Oquendo*, 357 So. 3d at 218. However, the Second District attempted to characterize this evidence as relevant only in the context of the reasonable person standard—i.e., a reasonable person in the circumstances as known to the defendant—while denying the existence of a subjective component in the self-defense

---

9. Prior to the creation of the United States Court of Appeals for the Eleventh Circuit in 1981, the territorial jurisdiction of the Fifth Circuit included Florida.

standard and determining that "a defendant's *misperceptions*—[i.e.,] his misunderstanding of reality as altered by a disorder such as PTSD"—could not be relevant to determining the issue of self-defense. *Id.* On the contrary, we find that because section 776.012(2) identifies both an objective reasonable person component and a subjective component to self-defense, state-of-mind evidence[10] such as PTSD evidence can be relevant to the subjective component, even though it is irrelevant to the objective component. Such evidence may tend to show that a defendant with PTSD actually believed that he was in imminent danger. Our finding is also supported by Florida Standard Criminal Jury

---

10. As noted in *Mizell*, evidence of battered spouse syndrome is also state-of-mind evidence that Florida courts have deemed admissible in self-defense cases. 773 So. 2d at 620. The *Mizell* opinion indicates that this evidence is relevant to what the defendant actually believed was necessary under the circumstances (the subjective component of self-defense), *see id.*, while the Second District's opinion below argues that battered spouse syndrome evidence shows what a reasonable person would believe was necessary under the circumstances of the battered spouse (the objective reasonable person test), *Oquendo*, 357 So. 3d at 219-20. Such evidence may be relevant to both the subjective and objective components of self-defense, but as the instant case does not concern battered spouse syndrome, further discussion of it is unnecessary to our determination here.

Instruction 3.6(f), which instructs jurors to consider the "actual belief" of the defendant.

Because we agree that the test for self-defense includes both a subjective and objective component, we disapprove the Second District's holding in *Oquendo* that Florida's self-defense law involves only a reasonable person test and approve the First District's holding in *Mizell*.

### C. *Oquendo's Conviction*

Although we disapprove the Second District's determination that Florida's self-defense law requires only an objective reasonable person test and that evidence of a defendant's subjective belief is never relevant, we nevertheless approve the Second District's affirmance in this case. Here, Oquendo did not admit to intentionally firing the gunshot that killed Cason. Instead, he testified that the gun accidentally discharged as he was trying to wrestle it away from Cason. Thus, his PTSD evidence would not be relevant to whether he actually believed he needed to fire the gun to defend himself since, according to his own testimony, the gun was fired accidentally.

Furthermore, although defense counsel stated that Oquendo was not seeking to offer expert testimony concerning PTSD as diminished capacity evidence, his explanation that it would be used as "state-of-mind evidence" showing how "somebody that suffers from that particular mental illness can react differently" sounds like evidence of diminished capacity. For example, defense counsel at one point argued that case law supported that, where PTSD is involved, "the jury can get an instruction [o]n it because [the defendant] may not react as well to a stressful situation as a normal person."

We also disapprove the Second District's holding in *Oquendo* that PTSD evidence is necessarily inadmissible diminished capacity evidence, 357 So. 3d at 218-19, but we agree that defense counsel's arguments in this case indicate that the PTSD evidence was being sought to establish diminished capacity. Diminished capacity evidence is evidence of lowered mental capacity that is introduced for the purpose of negating the specific intent requirement of a particular charged offense. *See Chestnut v. State*, 538 So. 2d 820, 820 (Fla. 1989). Such evidence is generally inadmissible in Florida. *Id.* at 824 ("To permit the defense of diminished capacity would

invite arbitrary applications of the law because of the nebulous distinction between specific and general intent crimes.").

We reiterate that our holding today does not condone the use of PTSD evidence to support an otherwise inadmissible claim of diminished capacity. Where such state-of-mind evidence is relevant to support a particular defense, the danger of a jury misapplying the evidence as diminished capacity evidence may be prevented by giving the jury "a limiting instruction that the expert testimony does not tend to prove lack of specific intent but rather is relevant to establish a particular defense." *Perry v. State*, 256 So. 3d 888, 894 (Fla. 4th DCA 2018). The trial court in *Mizell*, for example, set forth in its pretrial order five specific conditions that had to be met in order for the defense to introduce the PTSD evidence, including the defendant himself testifying and laying a predicate, the expert witness being allowed only to lay out the defendant's background but not vouch for it, and the expert witness being prohibited from offering an opinion on the validity of the defendant's self-defense claim. 773 So. 2d at 620.

However, here, the record supports the conclusion that the trial court did not abuse its discretion in refusing to admit expert

testimony on PTSD given defense counsel's arguments suggesting the central purpose was to show diminished capacity, and given that the defendant did not lay the predicate. Thus, we approve the Second District's affirmance in this case.

### III. Conclusion

We approve the First District's decision in *Mizell* and hold that the test for self-defense includes both a subjective and objective component. Although we disapprove the Second District's holding that self-defense does not involve a subjective component, we approve the Second District's affirmance and ultimate outcome in this case.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal
Certified Direct Conflict of Decisions

Second District - Case No. 2D21-2408

(Pinellas County)

Blair Allen, Public Defender, and Tosha Cohen, Assistant Public Defender, Tenth Judicial Circuit of Florida, Bartow, Florida,

　　　for Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Marilyn Frances Muir, Chief Assistant Attorney General, Laurie Benoit-Knox, Senior Assistant Attorney General, and Jonathan P. Hurley, Assistant Attorney General, Tampa, Florida,

　　　for Respondent